THOMAS BRYSON BEVER *v.* STATE OF
MARYLAND

[No. 347, September Term, 1967.]

*Decided June 24, 1968.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Fred W. Rickerson* for appellant.

*Fred Oken, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Benjamin R. Wolman, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

PER CURIAM.

The appellant was found guilty by a jury in the Circuit Court for Prince George's County of daytime housebreaking with intent to commit grand larceny and grand larceny and sentenced generally to imprisonment for a term of 4 years.

I

The case came on for trial at 3:24 p.m. Out of the presence of the jury panel, counsel for the appellant requested a continuance because "the jury panel is sitting on its last day. They have been sitting here all day in court with nothing to do ex-

cept hang around. I am sure that every one of these jurors, if they are like I am, at this hour of the day are pretty well teed off and pretty well fed up with the fact that they have been sitting here all day doing nothing, and they are in a hurry to get home." He also alleged that he felt it impaired his ability as counsel to commence trial at that hour and suggested that the ability of the trial judge may also be impaired. He urged that "to start at this hour I think very definitely is prejudicial to the defendant's right to a fair and impartial jury trial." The court denied the request for a continuance, noting that the case came in for trial "at that hour solely because of the calendar of the court" and through no fault of the State or the appellant. It found no reason not to start the trial, stating that there was "an amount of time to go on the regular court day." It said that it would submit a *voir dire* question to all prospective jurors with respect to the matter if requested. At the request of defense counsel the court said to the jury panel:

> "Members of the jury panel, I am going to ask you a question and I want—I don't want any embarrassment. I want a true answer and I don't want anyone to hesitate in the slightest if you feel that this would in some way affect your decision in the case. It it now ten minutes of four and we are about to start a case. I don't know how long the case will last. It may carry beyond 5 o'clock. It may go beyond six. Possibly it might go even later. Do any of you have commitments tonight or are any of you in such a state of fatigue or tiredness that you feel that this condition of your plans for the evening or your state of alertness or tiredness, as it may be, would in any way be prejudicial in reaching a decision in the case?" [1]

No prospective juror indicated that those circumstances existed with respect to him so as to be prejudicial in any way to his reaching a decision in the case.

Appellant contends on appeal that the lower court abused its discretion in refusing to continue the case and in support of the

---

1. The trial concluded at 7:31 p.m.

contention states that the appellant "did not receive a fair trial because of the late hour of beginning trial, evidenced by the fact that the jury deliberated only seventeen minutes, and by the comments of the trial court in expediting the trial." We find no substance in the reasons advanced to support the contention. It cannot be presumed here from the length of the jury's deliberation that they did not properly fulfill their sworn duty. Nor do we find from the record that the court in any way was "rushing the trial along," as alleged by the appellant. He quotes eight comments of the court as illustrative of this allegation, taken out of their context and scattered throughout some 104 pages of the transcript of the proceedings. None of the remarks now referred to were objected to at the time they were made. At no time during the trial did the appellant assert that any conduct of the trial court "resulted in permeating the proceedings with an aura of haste" or claim that he was prevented or discouraged from presenting a full defense. The cited remarks of the trial court were no more than a reasonable attempt to maintain an orderly expedition of the trial and were not in any respect improper or prejudicial to the appellant. The allowance or denial of a continuance, as the appellant recognizes, is within the sound discretion of the trial court. *Johnson v. State,* 237 Md. 283, 288; *Bright v. State,* 1 Md. App. 657, 661. We have no difficulty in finding that the trial court did not abuse its discretion and that the appellant was not denied a fair trial by the case being then tried.

## II

In examining the jury on their *voir dire* the court asked if anyone on the panel or member of their family had been a member of a police or law enforcement agency. One prospective juror said that he had been a police officer in the District of Columbia and had been retired for three and a half years. After the *voir dire* examination, out of the presence of the jury, the court struck four jurors for cause. At this point defense counsel moved that the retired police officer be stricken, stating, "I never heard of a retired police officer serving on a jury case." The court denied the motion, but at counsel's request asked the following question: "In view of your past experience

in the police department * * * would this in any way prevent you from rendering a fair and impartial verdict in a criminal case based upon the evidence that you heard, or would you be free of any sort of favorable prejudice towards the police, a police agency? * * * It would not affect you in any way?" The juror replied, "No, sir."

On appeal the appellant does not contend that the juror was not competent to serve or that the fact that he had been a police officer was a sufficient basis for challenging him for cause. See *Borman v. State,* 1 Md. App. 276. He urges, however, that his counsel was exercising a peremptory challenge, the denial of which was error as he had not made the four peremptory challenges permitted him. Md. Rules, 746 a 1. We think it clear from the record that defense counsel was not attempting to exercise a peremptory challenge but a challenge for cause which was properly denied. We think it also clear from the record that both the trial court and defense counsel considered the challenge as one for cause and that it was on this basis that the court made its ruling. The privilege of challenging peremptorily is a right to reject a juror without the necessity of first showing cause. *Parker v. State,* 227 Md. 468. The appellant had peremptory challenges available to him and could have exercised them as a matter of right until the jury was sworn. Md. Rules, 746 c. He did not do so and cannot now complain.

### III

At the trial, defense counsel objected to a State's witness testifying that he had picked out the defendant's picture from a stack of photographs shown him by the police. Out of the hearing of the jury he moved for a mistrial on the ground that by the testimony the jury knew that the police had a photograph of the appellant and "there is but one logical conclusion the jury can draw" and that is that the appellant had a prior police record since his photograph was in the possession of the police. The trial court denied the motion.

Testimony by a witness that he was able to identify the accused from police photographs is admissible. *Judy v. State,* 218 Md. 168; *Basoff v. State,* 208 Md. 643. See *Austin v. State,* 3 Md. App. 231. We do not agree that the mere fact that an

accused was identified from photographs shown to a witness by the police results in a conclusion by the jury that the accused had a criminal record. The challenged testimony as adduced was properly admissible and it was not error for the court to refuse to declare a mistrial. Further, the appellant elected to testify in his own behalf and on direct examination admitted to having been previously convicted of breaking and entering and on cross-examination to other convictions. We see no prejudice to him.

## IV

The appellant also contends that the evidence was not sufficient to sustain the convictions and the court erred in denying his motions for judgment of acquittal. The question of the denial of the motion for judgment of acquittal made at the close of the evidence offered by the State is not before us as the appellant withdrew it by offering evidence. Md. Rule, 755 b. The review on appeal of the sufficiency of the evidence was preserved by a renewal of the motion at the close of all the evidence.

On 26 April 1966 Walter A. Bonfield testified that he left his third floor apartment, in which he lived alone, about 8:00 a.m. The door to his apartment had an "automatic lock" and when he left he checked the door to make sure it was locked. He returned about 6:15 p.m. and as he went "up the landing to the level" on which he lived, he noticed that his apartment door was open. He found that a television set, purchased two weeks before for $154, his raincoat valued at $25, his wedding ring valued in excess of $50 and a transistor radio valued at $25 were missing. He called the police "to report the robbery." He did not know the appellant and had not given him permission to enter his apartment. The missing items were not recovered.

Dennis F. English testified that on 26 April 1966 he lived in the same apartment building in which was Bonfield's apartment and was home all that day. In the early part of the afternoon, between 2:00 and 3:00 p.m., he was working on his car in the parking lot directly in front of the apartment building. Two men came out of the apartment entranceway. One was carrying a white, plastic case, portable television set and the

other a radio. They entered an automobile on the parking lot and drove away. He "took down the license number" as they pulled away. Later that evening when he and his wife returned from visiting relatives in Virginia, he observed a police car in front of the apartment building and a police officer by the window in a top floor apartment. He went to that apartment and said to the police, "If there is a TV and a radio missing from one of the apartments, I have the license number and the description of the men that took it." He gave the officer the license number of the car in which the two men drove away, a description of the vehicle and a description of the men. Later he picked out the appellant's photograph from a group of photographs shown him by the police and at the trial identified the appellant as one of the men he had seen leaving the apartment building.

The appellant was arrested on a warrant obtained after English had identified him from the photographs and a listing had been obtained from the Department of Motor Vehicles in Washington on a Metropolitan, D. C. tag number given the police by English. The car was listed in the name of the appellant's wife. It was brought out in cross-examination of Detective Richard Salter of the Prince George's County Police that another apartment in the building had been broken into that day and a radio taken.

The appellant testified that he was "quite sure" he was at work the day the crime was committed. He drove a truck delivering auto parts. He was arrested on 3 June. He denied breaking into the apartment, stealing the goods, or receiving the goods. He said that he had made no deliveries on 26 April to the apartment building and did not even know where the building was located. He had previously been convicted for breaking and entering. On cross-examination he said that he had also been convicted of larceny and assault and battery. On 26 April 1966 he was working for Wright's Auto Parts, "as well as I can remember," and had worked there for three or four months. He thought he began work at 8:00 A.M. and finished at 4:30 P.M. He did not know any place he went on the day in question.

The appellant's wife testified that she and her husband had

only one car listed in her name. On 26 April 1966 she saw her husband in the morning and then she drove in the car to the National Institute of Health, where she then worked, parked it and after work drove home in it. She believed that the appellant at that time worked for W & W Roofing Company.

It has been consistently held that in order to overturn a judgment entered on a verdict of a jury for insufficiency of the evidence, it is necessary that there be no legally sufficient evidence or rational inferences drawable therefrom on which the jury could find a defendant guilty beyond a reasonable doubt. *Hott v. State,* 3 Md. App. 298, 304; *Agresti v. State,* 2 Md. App. 278, 284. We think the jury could properly find from the evidence that there had been a breaking of Bonfield's dwelling house in the daytime with intent to steal and that goods to the value of $100 or more had been stolen.[2] The evidence was clear that the door of Bonfield's apartment was locked when he left and open when he returned, that it had been opened during the daytime, that he lived alone, that his personal goods were missing when he returned and that the goods were of a value of $100 or more. The appellant urges that the market value of the goods at the time they were taken was not proved. The undisputed evidence was that the television set was purchased two weeks before at a price of $154. We think this and the testimony of the owner as to the value of the other goods stolen was sufficient to make the issue of value a question for the jury. *Gazaille v. State,* 2 Md. App. 462, 464-465; *Scott v. State,* 1 Md. App. 481, 494; *Hill v. State,* 237 Md. 630. We

---

2. Md. Code (1967 Repl. Vol.) Art. 27, § 30 (b) proscribes the breaking of "a dwelling house in the daytime with intent to commit murder or felony therein, or with intent to steal, take or carry away the personal goods of another of any value therefrom." The first count of the indictment charged that the appellant "did break (the dwelling house) with intent to commit a certain felony there and therein, to wit: with intent then and there certain goods and chattels in the said dwelling house then and there being found, then and there feloniously to steal, take and carry away." Thus, although the statute includes a breaking with intent to commit the misdemeanor of petit larceny, Md. Code, supra, Art. 27, § 341, the appellant was charged with breaking with the intent to commit a felony—grand larceny, § 340.

think the evidence was also sufficient for the jury to find that the appellant was the criminal agent. He was positively identified as one of two men coming out of the apartment building carrying a television set and a radio. Although there was testimony that another apartment had been broken into, there was no evidence that a television set had been taken therefrom. It was not essential that the evidence show conclusively that the appellant rather than the other man was carrying the television set. The jury could properly find that the crime was committed as a joint enterprise and both were principals. Possession of recently stolen goods supports a credible inference that the possessor was the thief, *Frey v. State,* 3 Md. App. 38; *McGlothlin v. State,* 1 Md. App. 256, and, coupled with evidence of a breaking, that he was one who performed the breaking. *Allen v. State,* 2 Md. App. 740; *Chittum v. State,* 1 Md. App. 205. The weight of the evidence is a matter for the trier of facts. *Carroll v. State,* 3 Md. App. 50; *Hutchinson v. State,* 1 Md. App. 362. We find that there was legally sufficient evidence or rational inferences drawable therefrom on which the jury could find the appellant guilty beyond a reasonable doubt and that the lower court did not err in denying the motion for judgment of acquittal.[3] See *Poff v. State,* 3 Md. App. 289.

*Judgments affirmed.*

---

**3.** *Reagan v. State,* 2 Md. App. 262 is readily distinguishable from the instant case. In *Reagan* the record was devoid of any evidence of a breaking. Nor was the evidence with regard to the articles seen in the possession of Reagan sufficient to identify them as even being the types of articles stolen—that is whether a light brown or beige case he was seen carrying was a sewing machine or a stereo and whether a white appliance was a radio or a can opener or some other object. In the instant case it is clear that there was a breaking, that a television set was taken and that a television set was in the possession of men seen leaving the scene of the breaking. We think it also clear that the testimony of the owner here was sufficient to support an inference that the articles he found to be missing had been wrongfully and fraudulently taken by means of the breaking. We note that he immediately called the police to report the "robbery" of his premises.