# EARL ALFONSO JOHNSON *v.* STATE OF MARYLAND

[No. 232, September Term, 1969.]

*Decided March 12, 1970.*

144

The cause was argued before MURPHY, C.J., and ANDERSON, ORTH, and THOMPSON, JJ.

*Donald B. W. Messenger* for appellant.

*James L. Bundy, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *James E. Kenkel, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

Appellant, Earl Alfonso Johnson, was tried on March 12, 1969 in the Circuit Court for Prince George's

County by a jury, Judge Samuel W. H. Meloy presiding, for robbery with a dangerous and deadly weapon and related offenses. The jury found appellant guilty of armed robbery and he was sentenced to twenty years under the supervision of the Department of Correctional Services.

Appellant presents four questions on appeal. They are as follows:

1. Was there legally sufficient evidence to find the appellant guilty of robbery with a dangerous and deadly weapon?
2. Did the State fail to prove the taking of the property from the person of the victim named in the indictment?
3. Did the trial court err in failing to grant appellant's oral motion for dismissal of the case prior to trial on the ground that his attorney in the courtroom on the morning the case was originally scheduled for trial observed one of the State's witnesses to the identification of the defendant talking with the detective assigned to the case and looking towards the defendant?
4. Did the trial court err in allowing the State's attorney to systematically exclude all Negro members of the jury panel?

Appellant's first two contentions go to the sufficiency of the evidence presented against him at the trial to sustain his conviction, and the third contention goes to the admissibility of the evidence.

## I—II

The test to be applied in judging the sufficiency of the evidence in a jury trial is that the admissible evidence adduced must show directly or support a rational inference of the facts to be proved, from which the jury could fairly be convinced, beyond a reasonable doubt, of the defendant's guilt of the offense charged. *Williams v State,* 5 Md. App. 450, 247 A. 2d 731.

146

The pertinent testimony adduced at trial revealed that on August 6, 1968 three men carrying guns entered the Bank of Brandywine and forced the three tellers to give them $23,234. Mrs. Loula C. Smoot testified that she was a teller on the day in question and her supervisor, who was present at the bank that day, was Mr. Roland R. Sasscer. Mrs. Smoot further testified that she was unable to identify any of the individuals who had committed the robbery. Mr. Jose Guiterrez testified that he was in the bank at the time of the robbery and identified appellant as one of the perpetrators of the crime. Also Reverend Thomas N. Hawkins testified that he was present in the bank at the time of the robbery. He made an in-court identification of appellant as one of the perpetrators of the crime. However, Reverend Hawkins admitted that he attended a lineup in October, but that he failed to identify appellant as one of the robbers and, in fact, tentatively selected someone else. He explained this by stating that the lighting conditions were poor and he was nervous and frightened due to a phone call he had received just prior to viewing the lineup. A positive identification of the accused by a single eyewitness, if believed by the trier of fact, is sufficient to sustain a conviction. *Reed v. State,* 1 Md. App. 662, 232 A. 2d 550; *Tipton v. State,* 8 Md. App. 91, 258 A. 2d 606.

The appellant further contends that the State failed to prove beyond a reasonable doubt that the property was taken from the person of the alleged victim and that this was an essential element of the crime of robbery. His argument is that the State alleged in the indictment the robbery of Roland R. Sasscer when the evidence revealed that the robbery victim was not Roland R. Sasscer but Loula C. Smoot, a teller at the bank on the day in question. We find no merit in this argument. The record discloses that Roland R. Sasscer was the cashier of the bank and as such was supervisor of the tellers; that he was present at the bank on the day of the robbery, and that he was responsible for the operation of the tellers' windows. A charge of robbery may be sustained by proof

that the property was forcibly taken from the care, custody, control, management or possession of one having a right superior to that of the robber. Here Mr. Sasscer was supervisor of the tellers at the bank and as such was responsible for the money. He was present when the bank was robbed at gunpoint. We find that Roland R. Sasscer was properly named as the victim in the indictment. *Hartley v. State,* 4 Md. App. 450, 465, 243 A. 2d 665.

From the testimony produced at trial, we find that there was ample evidence to prove the *corpus delicti* as alleged in the indictment and the criminal agency of the appellant.

### III

When the case was originally called for trial on October 18, 1968 appellant's counsel made an oral motion that the case be dismissed on the grounds that he was unaware that the State intended to call more than one witness to testify as to the defendant's identity, and, for the further reason, that he observed this witness discussing the case with a detective and looking towards the defendant. The court inquired of appellant's counsel if he had availed himself of a motion for discovery. Counsel replied that he had not as he had relied upon the practice in the State's Attorney's office. The State's Attorney in answer to an inquiry from the court said that he had only learned of the name of the witness that morning. Appellant presented no testimony on his motion to dismiss, and the court denied the motion. At appellant's request the court granted appellant's motion for a continuance. The trial on the merits, from which this appeal arises, was held March 12, 1969.

Appellant contends that the alleged pretrial conversation between the witness Guiterrez and Detective Ansell on October 18, 1968 tainted the testimony of the witness, and that the trial court erred in refusing to grant appellant's oral motion to dismiss the case on that date, or to suppress any testimony of the witness Guiterrez regarding identification.

We find appellant's contention devoid of merit. In *Powers v. State,* 8 Md. App. 487, 261 A. 2d 44, we said: "Nothing in *United States v. Wade,* 388 U. S. 218, *Gilbert v. California,* 388 U. S. 263, or *Stovall v. Denno,* 388 U. S. 293, even remotely suggests dismissal of an indictment as an appropriate sanction for violations of the constitutional principles therein enunciated; at most, identification evidence obtained in violation of such cases may be ruled inadmissible at the trial." Neither at the proceedings on the motion to dismiss nor at the trial did appellant present any evidence to show that the alleged conversation between the detective and the State's witness was prejudicial to him or, in fact, involved his identification. Moreover, the record discloses that no motion was ever filed by the appellant to suppress the testimony of the witness Guiterrez prior to trial or at trial. In fact, at the trial, the witness Guiterrez identified the appellant as one of the bank robbers without objection by the appellant. The burden is on the defendant to show *prima facie* that a pretrial confrontation was illegal. *Miller v. State,* 7 Md. App. 344, 347, 255 A. 2d 459. Here appellant made no showing of any illegal confrontation nor produced any evidence of taint.

## IV

In the process of selecting the jury, the State employed seven of its ten peremptory challenges authorized by Maryland Rule 746. Six of these were used to strike black members of the panel. As a result of these six challenges, there were no black members on the jury which tried appellant. Appellant made timely objection to the panel, and now contends on appeal that the trial court erred in permitting the State to so use its challenges. His contention is based upon an alleged denial of equal protection of the law under the Fourteenth Amendment to the Constitution of the United States. He maintains that the objection by trial counsel raised a *prima facie* case of discrimination and that the objection shifted the burden to establish that the peremptory challenges used did not

constitute systematic discrimination. We find no merit to appellant's contention. Md. Rule 746 (a) (2) provides:

"Challenge—Peremptory
 a. Number
 2. Penitentiary or Capital Case.
 In a trial for an offense punishable by death or confinement in the penitentiary each defendant shall be permitted twenty peremptory challenges and the State shall be permitted ten peremptory challenges for each defendant."

The privilege of challenging peremptorily is a right to reject a juror without the necessity of first showing cause and is not the right to select a juror. *Parker v. State,* 227 Md. 468, 177 A. 2d 426; *Bever v. State,* 4 Md. App. 436, 243 A. 2d 634. "It enables the prisoner to say who shall not try him; but not to say who shall be the particular jurors to try him." *Turpin v. State,* 55 Md. 462 at 469 (1880). It is thus clear that as far back as ninety years ago the right of peremptory challenges both by the State and the defendant was vital to the conduct of a criminal cause in this State.

The Supreme Court of the United States in *Swain v. Alabama,* 380 U. S. 202, was faced with a challenge identical to the one presented in the instant case. There the State of Alabama by use of peremptory challenges had removed all persons of the Negro race from the jury which had tried Swain. In affirming Swain's conviction the Court placed great reliance upon the vital part which peremptory challenges play in the trial process. Having established that the challenge plays the same role in our State system, we adopt the language found in *Swain v. Alabama,* 380 U. S. 202 at 220-222:

"The essential nature of the peremptory challenge is that it is one exercised without a reason stated, without inquiry and without being subject to the court's control. *State v.*

150

*Thompson,* 68 Ariz. 386, 206 P. 2d 1037 (1949) ; *Lewis v. United States,* 146 U. S. 370, 378. While challenges for cause permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality, the peremptory permits rejection for a real or imagined partiality that is less easily designated or demonstrable. *Hayes v. Missouri,* 120 U. S. 68, 70. It is often exercised upon the 'sudden impressions and unaccountable prejudices we are apt to conceive upon the bare looks and gestures of another,' *Lewis, supra,* at 376, upon a juror's 'habits and associations,' *Hayes v. Missouri, supra,* at 70, or upon the feeling that 'the bare questioning [a juror's] indifference may sometimes provoke a resentment,' *Lewis, supra,* at 376. It is no less frequently exercised on grounds normally thought irrelevant to legal proceedings or official action, namely, the race, religion, nationality, occupation or affiliations of people summoned for jury duty. For the question a prosecutor or defense counsel must decide is not whether a juror of a particular race or nationality is in fact partial, but whether one from a different group is less likely to be. It is well known that these factors are widely explored during the *voir dire,* by both prosecutor and accused, *Miles v. United States,* 103 U. S. 304; *Aldridge v. United States,* 283 U. S. 308. This Court has held that the fairness of trial by jury requires no less. *Aldridge, supra.* Hence veniremen are not always judged solely as individuals for the purpose of exercising peremptory challenges. Rather they are challenged in light of the limited knowledge counsel has of them, which may include their group affiliations, in the context of the case to be tried.

"With these considerations in mind, we cannot hold that the striking of Negroes in a par-

ticular case is a denial of equal protection of the laws. In the quest for an impartial and qualified jury, Negro and white, Protestant and Catholic, are alike subject to being challenged without cause. To subject the prosecutor's challenge in any particular case to the demands and traditional standards of the Equal Protection Clause would entail a radical change in the nature and operation of the challenge. The challenge, *pro tanto,* would no longer be peremptory, each and every challenge being open to examination, either at the time of the challenge or at a hearing afterwards. The prosecutor's judgment underlying each challenge would be subject to scrutiny for reasonableness and sincerity. And a great many uses of the challenge would be banned.

"In the light of the purpose of the peremptory system and the function it serves in a pluralistic society in connection with the institution of jury trial, we cannot hold that the Constitution requires an examination of the prosecutor's reasons for the exercise of his challenges in any given case. The presumption in any particular case must be that the prosecutor is using the State's challenges to obtain a fair and impartial jury to try the case before the court. The presumption is not overcome and the prosecutor therefore subjected to examination by allegations that in the case at hand all Negroes were removed from the jury or that they were removed because they were Negroes. Any other result, we think, would establish a rule wholly at odds with the peremptory challenge system as we know it."

*Judgment affirmed.*