RICHARD REESE WHITTEMORE *v.* STATE OF MARYLAND.

*Selection of Jurors — Questions Permissible — Discretion of Court—Time for Peremptory Challenge.*

The court itself may question a prospective juror to determine his eligibility.						p. 313

It is within the discretion of the trial court to exclude questions asked a prospective juror, such as in regard to his age and former business, not for the purpose of determining his eligibility, but for the purpose of enlightening counsel as to whether there should be a peremptory challenge.			pp. 313-315

Questions asked of jurymen should be clearly pertinent to some issue of eligibility. p. 313

An examination of a juryman should not be speculative, inquisitorial, catechizing, or fishing, to aid in deciding on peremptory challenges. pp. 313,314

The permissible objects of inquiry in determining the eligibility of jurymen are committed largely to the sound discretion of the court, which will adapt the questions to the needs of particular cases, in the effort to secure an impartial jury, fair both to the prisoner and to the State. p. 314

Any circumstances which may reasonably be regarded as rendering a juryman unfitted for this service may be made the subject of questions, and a challenge for cause. p. 314

Neither the prisoner nor the State has any legal right to select jurymen, but merely the right of rejection, and consequently defendant's counsel could not justify a question as to the age of a juryman on the ground that he wished to procure a jury of young men, who might be more favorably inclined to the defense offered. p. 315

Questions not directed to a specific reason for disqualification and exclusion by the court may be refused in the court's discretion, and a ruling as to the nature and extent of the examination will not be interfered with in the absence of a clear abuse of that discretion. p. 315

That, on a trial for homicide, a juryman stated that he had worked with deceased under the same employer about twenty-five years previously, and had liked him, and had seen him once since, about fifteen years previously, was not ground for a challenge for cause, the juryman stating that he could render an impartial decision. p. 316

Where the swearing of the jury is deferred until a full panel has been procured, even jurymen who have been selected and accepted, and are seated in the jury box, may be challenged peremptorily, up to the time of swearing. pp. 316-320

*Decided July 8th, 1926.*

Prosecution of Richard Reese Whittemore for murder. From a judgment of conviction, defendant appeals. Affirmed.

The cause was argued before BOND, C. J., PATTISON,
URNER, ADKINS, OFFUTT, DIGGES, PARKE, and WALSH, JJ.

*Edgar Allan Poe,* for the appellant.

*Thomas H. Robinson, Attorney General,* and *Herbert R.
O'Conor, State's Attorney for Baltimore City,* with whom
were *John Hubner Rice, Assistant Attorney General,* and
*Rowland K. Adams, Deputy State's Attorney,* on the brief,
for the State.

BOND, C. J., delivered the opinion of the Court.

The appellant brings up for review by this Court three
rulings made by the trial court during the selection of a
jury to try him on an indictment for murder. The charge
was that in an escape from the Maryland State Penitentiary,
where he had been confined under sentence for a previous
crime, he murdered one of the guards, Robert H. Holtman;
and upon the trial he was found by the jury to be guilty
of murder in the first degree, and was sentenced to be hanged.
The appellant does not contend that any of the jurors finally
sworn were disqualified, he makes no objection to any of
them; and no ruling on the admissibility of evidence or on
any other matter arising during the course of the trial is here
complained of. But the argument on the exceptions taken
during the selection of the jury has entailed a new examina-
tion and study of the methods followed by the court, and
requires an extended discussion of the ground of two excep-
tions, especially.

The first exception is to a ruling that counsel for the appel-
lant, Mr. Poe, who had been assigned by the court to defend
the prisoner, could not question one of the prospective jurors,
Harry Frank, on his *voir dire,* as to his age and his former
business, in order to aid counsel in deciding whether to ex-
clude that juryman by a peremptory challenge. On the pre-
liminary printed list of jurors furnished to counsel, Harry
Frank was described as "retired." The court examined all
the jurors called, on their *voir dire,* to determine their quali-

fications, and, after the questioning of the first one called, by a series of questions previously prepared, informed counsel that he would be glad to have them submit other questions that would affect the eligibility of the juror and not for the purpose of enlightening counsel as to whether there should be a peremptory challenge. This distinction the court considered to be in accordance with decisions of the Court of Appeals in *Handy v. State,* 101 Md. 39, and other cases. Accordingly, after Harry Frank had been examined on his *voir dire,* and Mr. Poe asked him his age, the court interposed to say that such questions did not touch upon a juror's eligibility and could not be asked. The juror answered the question actually put to him, saying he was forty-nine years of age, but the discussion between the court and counsel, in addition to counsel's own assurance, makes it sufficiently plain that the ruling excluded a question as to this juror's former business, and any similar questions that the defense may have wished to ask of other prospective jurors, to aid in determining whether to challenge peremptorily. It does not appear whether any other juryman might, in fact, have been similarly questioned but for this ruling. The exception is, specifically, to the exclusion of questions as to age and former occupation of Harry Frank. The defense did not specify any cause of disqualification which might be disclosed by such questions. The particular juryman was ultimately excluded on a peremptory challenge by the defense.

In the case of *Handy v. State, supra,* this Court had to consider exceptions to an examination of jurymen by the court itself, rather than by counsel, and to the exclusion of a question whether a particular juryman was a married man, asked by the defense for aid in determining whether to challenge peremptorily, and the Court affirmed the action of the trial court in each respect. We do not understand the appellant here to deny the propriety of the court's examining jurymen; that is clearly settled by the case cited, *Handy v. State,* and we see no reason to depart from that decision on the point, but, on the contrary, much reason

for adhering to it, apart from its force as an authority. In other jurisdictions, too, this method is held to be one which the court may adopt in its discretion. *Commonwealth v. Phelps,* 209 Mass. 412; *Commonwealth v. Spencer,* 212 Mass. 438, 444; *Pinder v. State,* 27 Fla. 370; *Carpenter v. Hyman,* 67 W. Va. 4; *Thompson & Merriam on Juries,* sec. 241. The appellant does contend, however, that the decision in *Handy v. State* does not settle the point of the propriety of questions on behalf of one side or the other for aid in determining whether to exercise the right of peremptory challenge. But we think it does so settle the point, at least as it arose in that case. And our conclusion is that, while such questions as were excluded in this case would not in themselves offend against any rule, and, without error, might have been admitted, as they commonly are admitted, still, under the decision in *Handy v. State,* it was within the discretion of the trial court to exclude them as questions for peremptory challenges purely, and there was no error in the court's doing so.

In *Handy v. State,* the problem was treated rather as one of the propriety of questions not directed to any specified cause of disqualification of the juryman, for partiality, prejudice, or other grounds rendering him unfit to sit in the case, that is to say, questions at large, and irrespective of any such disqualification. And viewing the problem thus, there may, perhaps, be less difference on principle found among the majority of decisions on the subject than has been supposed, for there seems to be widespread agreement on the principle that questions asked of jurymen should be clearly pertinent to some issue of eligibility. *Thompson & Merriam on Juries,* secs. 242 and 243; *McDonald v. State,* 172 Ind. 393, 19 Annot. Cases 766. What sort of challenge will be resorted to in a particular instance, may be uncertain in advance of the examination. This Court, in *Handy v. State,* quoted several decisions in English and American courts, opposing examinations of jurymen which they characterized as speculative, inquisitorial, cate-

·chising, or fishing, to aid in deciding on peremptory chal-
lenges, and definitely decided that this was improper. Judge
Pearce writing the opinion for the Court said, "we are
:aware that there are decisions to the contrary in other courts
of equal authority and reputation, but such knowledge as
we possess of the experience in practice under those de-
·cisions does ·not commend them to our adoption"—in this
referring, presumably, to reports from other jurisdictions
·of seemingly unreasonable encumbering and prolongation
of the work of securing a jury to proceed with the trial.
It is true, as counsel points out, that the Court in *Handy v.
State* held that whether the juryman questioned was or was
not a married man, was immaterial, so that the particular
question asked was· objectionable because of that fact, but
that holding does not detract from the fact that the Court
·decided that questions not specifically directed to some
reasonable cause for disqualification, and so, merely for
peremptory challenge, should not be asked. And see *Gilles-
pie v. State,* 92 Md. 171, 174.

There is no statute in Maryland prescribing the objects
·of inquiry in determining the eligibility of jurymen, and
the subject is not one covered by rigid rules, but is com-
mitted largely to the sound discretion of the trial court in
·each case. That court will, in the exercise of its discretion,
·adapt the questions to the needs of particular cases, in the
·effort to secure an impartial jury, fair to the prisoner and
to the State, too. And any circumstances which may reason-
ably be regarded as rendering a juryman unfitted for this
service, may be made the subject of questions, and a chal-
lenge for cause. The appellant here suggests, by way of
·illustrating the need of freedom to ask questions as to a
juryman's former occupation, that, in this instance, con-
·ceivably, he too may have been a former penitentiary guard,
·and because of that fact unfitted to render an impartial
verdict on. a charge of murder of a guard by a prisoner.
But the answer to that suggestion is that if any such ground
·for doubting a juryman's fitness should be known, or feared,

a question directed to that ground specifically would not only be proper, but in this case would probably have been asked; and if the facts showed reason to doubt the juror's fitness to sit in judgment, a challenge for cause might have been allowed. Again, by way of showing possible detriment from including questions as to jurymen's ages, counsel says he would have preferred a jury made up predominantly of young men, as likely to incline more favorably to the defense offered by the prisoner, who is a young man. It would seem hardly necessary to know the exact ages of jurymen in order to select the younger ones. But the better answer to the suggestion would seem to lie in the principle that neither the prisoner nor the State have any legal right to select jurymen; their right is a right of rejection. *United States v. Marchant,* 12 Wheat. 480; *Turpin v. State,* 55 Md. 462, 468. "Jurors are summoned for service, under the direction of the court, in the trial of such matters as may come before it, and not for the benefit of suitors. They are important parts of the machinery employed to administer the law." *Mills v. State,* 76 Md. 274, 279. Ordinarily, in practice, rejection and selection might, of course, be involved together in one and the same act, but the practical effect of the principle is that the law does not aid a party in an effort to select jurymen in hope of favor from them, for that is contrary to the object sought by the law.

The rule is, then, that questions, not directed to a specific reason for disqualification and exclusion by the court, may be refused in the court's discretion. The nature and extent of the examination are to be decided by the court in each case, in its discretion, and, on appeal the ruling will not be interfered with unless there has been a clear abuse of that discretion. *Handy v. State, supra. Tex. & Pac. Ry. Co. v. Marcus,* 237 U. S. 208, 214.

The questions excluded in this case were for no specified purpose, and apparently with no question of disqualification in mind, but were merely beginning a process of examining at large, in order to form impressions and preferences, which,

while they might properly be made the ground for peremptory challenges, would not test the eligibility of the jurymen. The exclusion was not an improper exercise of the court's discretion.

The second exception is to the overruling of the appellant's challenge for cause of another juryman, Charles W. Stump. This juryman, on his examination, had stated that in the year 1901 he had met the man who was killed, Holtman, worked under the same employer with him in the summer of that year, seeing him two or three times a week, and liked him, and that he had seen him once since that time, about fifteen years ago; and the challenge for cause was interposed upon the ground that such a friendly acquaintance might prejudice or bias the juror against the accused. The juror himself expressed the opinion that he could render an impartial decision as a juror; and we do not see anything in the acquaintance with Holtman to contradict that belief. Such mere acquaintance cannot of itself show partiality and disqualification for sitting in judgment. If it could, it would be almost impossible to obtain qualified juries in the less thickly populated parts of the state, where any man killed is likely to have been more or less well known to the entire population from which the jury would be drawn. We see no error in the trial court's exercise of its discretion in this ruling. *Garlitz v. State*, 71 Md. 293, 301. This juror, also, was excluded by a peremptory challenge by the defense.

The third exception is to the allowance of a peremptory challenge by the State of a juror previously declared qualified, accepted by both sides after examination on his *voir dire*, and seated in the jury box, as number 7, waiting to be sworn. Immediately after the seating of this juryman, and before taking a recess for lunch, the court explained to counsel that, according to the established practice in Baltimore City, those who were so selected and accepted, and seated in the jury box, could still be challenged peremptorily, if the limit of challenges had not been reached. And after twelve jurymen had been so selected, the State having still

seven challenges unused, and the defense three, the court asked whether there were other peremptory challenges on either side, the defense expressed satisfaction with the jury as it was, and the State challenged juror number 6. The court then proceeded to select a juror in place of juror number 6, who was thus excluded, and in the course of this selection the defense used its remaining peremptory challenges. Then the State challenged one more juror, number 7, and to this an objection was made by the defense, and the exception is taken to the overruling of that objection. In the discussion at the trial, counsel for the defense objected specifically to the State's challenging the jurors one by one, instead of all at once, after a complete panel of twelve had been seated in the box; but the argument on appeal has taken the broader ground of a denial of the propriety of any peremptory challenges of jurors accepted and seated in the box for swearing.

This practice has been followed in Baltimore City for many years, as a literal application of the common law rule that jurors may be challenged up to the time of swearing. *Thompson & Merriam, Juries,* sec. 265; *Proffatt, Jury Trial,* sec. 194; note, 18 *Annot. Cases,* 766; *Reg. v. Frost,* 9 C. & P. 129, 137; *Evans, Maryland Practice* (1839 Ed.), p. 41. Among the available reports of trials of criminal cases in Baltimore, an instance has been found as early as 1858, in the trial of Henry Gambrill, for murder. In that case the court directed that the jurors should be sworn as a whole, after twelve should be selected, and the second one so selected, John H. Tucker, announced that he recalled having said that if there was law and evidence enough he would hang the accused as high as Haman. The defense challenged the juror for cause, but without success, and then announced that a peremptory challenge would be reserved until the juror came to the book to be sworn. On the second day, during the examination of subsequent jurors, the court suggested to counsel, "that you do not exhaust all your challenges until you determine relative to the juror (Mr. Tucker) you objected to yesterday." Counsel had since satisfied themselves

that the juror was acceptable. The practice seems not to have been regarded as an innovation then.

By the common law practice, jurors were sworn one by one, as the examination of each one was completed (*Thompson & Merriam, Juries,* sec. 269; note 19 *Annot. Cases,* 768; *Reg. v. Frost, supra; Evans, Maryland Practice* [1839 Ed.], 41; *Crown Circuit Companion,* 8), and this practice is adhered to in some of the counties in this state and in other states. But the practice of swearing the jury as a whole, incidentally, of course, collecting and holding jurors in the box awaiting the selection of the twelve for swearing, has been widely adopted in this country, and in the work last cited, *Thompson & Merriam,* sec. 269 (6), it is described as the general American practice. "With us," the authors say, "the practice of swearing the jury is generally deferred until a full panel has been procured. The jurors, as they are accepted, are directed to their places in the box. It frequently happens that considerable time is consumed in the process of impanelling, during which a party is likely to discover some cause of challenge against a juror who has been accepted but remains unsworn; or, upon further inspection of the juror, as he sits in the box, he may desire to challenge him peremptorily, having grounds for suspecting him of partiality for his adversary. The question now arises, can this be done after the juror has been accepted? Is not such acceptance a positive bar to all further objection to the juror, as a matter of right?" On this a majority of those courts in which the question has arisen appear to support the right to challenge up to the time of swearing. See cases cited in *Thompson & Merriam, Juries,* sec. 269 (6) and (7); and 19 *Annot. Cases,* 768; *Mann v. State,* 23 Fla. 610; *State v. Leatherwood,* 26 N. Mex. 506. Other recent cases hold that while the challenge at that stage may not be insisted upon as a matter of right, the trial court may in its discretion permit it. *Jones v. State,* 166 Ark. 290; *State v. Wells,* 114 S. C. 151; *Comeford v. Norwood,* 34 N. Dak. 276; *Smiley v. Barnes,* 196 Ill. App. 536.

The decision of this Court in *Rogers v. State,* 89 Md. 424, is commonly cited as one of those which uphold the right of challenge up to the time of swearing the jury as a whole, and it is relied upon in this case as settling the question for Maryland; but the appellant denies the correctnesss of this interpretation of the decision. In that case, after the State had finished examining a juryman, and had turned him over to the defense for examination, the defense accepted him, and then the State challenged the juryman peremptorily. The defense excepted to the allowance of the State's challenge after having turned the juryman over to the defense, arguing that this constituted an acceptance by the State. Apparently the juryman had not been seated in the box. The State argued, on appeal, that its action did not constitute an acceptance of the juryman, and that even if it did, "yet in the absence of statute or rule of court to the contrary the right to revoke its acceptance and peremptorily challenge the juror remained in the State until the time of his being sworn to try the case, even although he had already been accepted by the traverser." And in support of this argument the State cited several cases upholding the right to challenge after the juryman challenged had been accepted and seated in the box. The first case cited was that of *People v. Carpenter,* 36 Hun. 315; and there the trial court had given warning that challenges after acceptance and seating in the box would not be permitted, but the Court, on appeal, said, "When a jury is impaneled in the manner in which this was being done, that is, by filling the panel before any one is sworn, prudent counsel may, with entire propriety, husband his peremptory challenges for use against more obnoxious persons that may be afterwards called; and when the box is full, if his challenges are not exhausted, then he may use them to sift out any of the panel whom his judgment or imagination, or caprice even, leads him to reject. Besides, when the impaneling occupies considerable time, he has had the opportunity to inquire touching the jurors, or to scrutinize and act upon their appearance, conduct or any hint or

suggestion of prejudice, partiality or unfitness. It is the very essence of a peremptory challenge that it is 'one for which no reason need be given' (as section 371 of the Code of Criminal Procedure defines it) ; and not infrequently such challenges are made because the prisoner or his counsel 'don't like the looks of the juror.' It is true the prisoner may be compelled to use his challenges as each juror appears, by the court directing, that each one be sworn before he takes his seat, and that course is legal, because the law is fully complied with. But that fact does not militate in the slightest degree with the right of the prisoner to challenge up to the last moment before the oath is administered where the other mode of impaneling in this case is pursued. In this case there was no express waiver of the right of peremptory challenge of either juror. And the law will not imply one from the mere submission to a rigid and illegal rule made by the court, probably against the rights and the manifest desire of the prisoner and his counsel." And other decisions to the same effect were cited. It was upon the case thus presented that this Court said in the opinion, "It is the settled practice in this State that the right of peremptory challenge can be exercised until the juror has been sworn to try the case." And this would seem to have been an agreement with the argument made. In the case of *Biddle v. State,* 67 Md. 304, Chief Judge Alvey speaks of a juror's retiring from the box when challenged peremptorily. And such a practice was followed in *Lockhart v. State,* 145 Md. 602, 613, and in many other cases which have come to this Court from Baltimore City.

It seems to us that these authorities must be taken to settle the question, if it is not settled by the long established practice in Baltimore City. Besides, there would seem to be no material difference between challenging at one time and at another, so long as there is no surprise or deception in it, as there was not here, and no good reason why the practice should not have been followed. "In some jurisdictions the mode pursued in the challenging of jurors is for the accused

and the government to make their peremptory challenges as each juror, previously ascertained to be qualified, and not subject to be challenged for cause, is presented for challenge or acceptance. But it is not essential that this mode should be adopted." *Pointer v. United States,* 151 U. S. 396, 410. Counsel had been warned of the practice at an earlier stage of the selection of jurors, and had made no objection to the first challenge from the box made in accordance with the practice he was told to expect. We see no error in the procedure in this respect.

*Judgment affirmed, with costs.*

OFFUTT, J., concurs in the result.

ADKINS, J,. dissents.