806 A.2d 265

**Christopher SWEET**

v.

**STATE of Maryland.**

No. 82, Sept. Term, 2001.

Court of Appeals of Maryland.

Aug. 30, 2002.

Margaret L. Lanier, Asst. Public Defender (Stephen E. Harris, Public Defender, and William E. Nolan, Asst. Public Defender, on brief) Baltimore, for petitioner.

Diane E. Keller, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. of Maryland, on brief) Baltimore, for respondent.

Argued before BELL, C.J., ELDRIDGE, RAKER, WILNER, CATHELL, HARRELL and BATTAGLIA, JJ.

RAKER, J.

Christopher Sweet, petitioner, was convicted in the Circuit Court for Montgomery County of second degree assault and third degree sexual offense against a minor. The court ordered petitioner to register as a sexually violent predator on the basis of a prior sexually based offense. We granted certiorari primarily to decide whether, based upon *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), due process requires that a jury determine the exis-

tence of the statutory factual condition precedent beyond a reasonable doubt before an offender may be required to register as a sexually violent predator pursuant to Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.) Article 27, § 792.[1] We also granted certiorari to determine whether the trial court erred in failing to make further inquiry of a juror that was arguably equivocal in announcing her verdict [2] and whether the trial court erred in refusing to pose a *voir dire* question requested by petitioner.

We shall hold that *Apprendi* does not apply to registration requirements under Maryland's Registration of Offenders statute. We shall hold further, based upon *State v. Thomas*, 369 Md. 202, 798 A.2d 566 (2002), that the trial court abused its discretion in failing to pose petitioner's requested *voir dire* question relating to the crimes with which he was charged because such question was reasonably likely to expose potentially disqualifying juror bias.

## I.

According to the testimony of the victim, Laquisha Franklin, an eleven-year-old girl, one day in the summer of 1999, her mother and a family friend, named Annie Smith, went shopping and left her home alone with petitioner, Ms. Smith's boyfriend. Petitioner and Laquisha sat on the floor playing a video game, with Laquisha sitting between petitioner's legs. Laquisha testified that petitioner commented on the size of her breasts. She testified that she "scooted" and petitioner "scooted" after her and that she felt his "private part ... bump" against her "butt" on two occasions. Petitioner told

---

1. Unless otherwise indicated, all subsequent statutory references are to Maryland Code (1957, 1996 Repl.Vol., 2000 Supp.), Article 27 (current version at Maryland Code (1957, 2001 Repl.Vol.) § 11–701 *et seq.* of the Criminal Procedure Code).

2. Because we shall reverse the judgments of conviction in this case on the grounds that the trial court erred by improperly restricting jury *voir dire*, we need not, and do not, address the issue related to the receipt of the verdict.

Laquisha not to tell anyone what had happened and threatened her with retaliation if she did so. Laquisha did not mention the incident to her mother until a few months later.

Laquisha's mother testified that, when Laquisha informed her of the incident, she notified Child Protective Services. A social worker with Child Protective Services testified that she interviewed Laquisha on September 23, 1999, and Laquisha told her about the incident.

Two police officers testified that they arrested petitioner on September 30, 1999. They testified that petitioner acknowledged that he noticed that Laquisha's breasts were growing and that he advised her that she should be careful around boys. They testified that petitioner also acknowledged that, while he was sitting on the floor, Laquisha's buttocks came in contact with his erect penis.

Petitioner was convicted by a jury sitting in the Circuit Court for Montgomery County of second degree assault and third degree sexual offense. After the verdict was rendered, petitioner requested, pursuant to Maryland Rule 4–327(e), that the jury be polled. After the jury was polled, the court excused the jurors, but asked them to assemble and wait in the lobby for a few minutes before departing. Defense counsel then approached the bench and made a motion to have the verdict stricken, proffering that one of the jurors paused and shook her head laterally while verbally responding affirmatively to her assent to the verdict. The trial court denied petitioner's motion, expressing its unwillingness to look beyond the juror's clear verbal response to evaluate her body language.

The Circuit Court sentenced petitioner to seven years incarceration on each count, to be served concurrently. The court also ordered petitioner, who had a prior conviction for a third degree sexual offense against a child, to register as a sexually violent predator pursuant to § 792, concluding that petitioner was a sexually violent predator. The trial court made no factual findings regarding whether petitioner was at risk for committing a future sexually violent offense. The judge mere-

ly stated that "with respect to the defendant in this case, Mr. Sweet, would qualify as one who has to comply with the violence [sic] sex offender registration."

The Court of Special Appeals affirmed, holding, *inter alia,* that *Apprendi* was not applicable, that the statute does not require a finding that the defendant is likely to re-offend, that the trial court made no error with respect to the *voir dire,* and that there was no defect in the taking of the jury verdict.

## II.  Sexually Violent Predator Registration and Community Notification[3]

Section 792 defines a "sexually violent predator" as an individual who is "convicted of a second or subsequent sexually

---

3.  The states were required by the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, 42 U.S.C. § 14071 (1994), to implement sex offender registration programs as a condition of federal law enforcement funding. *See* § 14071(g); *Graves v. State,* 364 Md. 329, 336, 772 A.2d 1225, 1229–30 (2001). The Wetterling Act was developed in response to national pressure to address crimes of violence and molestation committed against children in the United States. *See id.* at 336–37 n. 8, 772 A.2d at 1230 n. 8. The Wetterling Act established guidelines for registration and community notification for persons convicted of criminal offenses against minors or who were determined to be sexually violent predators. *See* § 14071; *Graves,* 364 Md. at 336–37 n. 8, 772 A.2d at 1230 n. 8. Among other things, a state must register persons convicted of certain offenses and provide the information to the FBI and local law enforcement agencies. *See* § 14071(a).  Federal law requires that registration information, at a minimum, include the offender's name, fingerprints, photo, and current address. *See* § 14071(b)(1).  Federal law also requires that the information be released to the extent necessary to protect the public from specific individuals. *See* § 14071(e)(2).  Nonetheless, when Congress enacted the Wetterling Act, it afforded the states wide latitude in fashioning their sex offender registration statutes and the criteria for which an individual may be classified as a sexually violent predator, leaving to the state the questions of which offenders should be the targets of disclosure, the information gathered and the extent of disclosure, and the standards and procedures, if any, to apply to these determination. *See Graves,* 364 Md. at 344, 772 A.2d at 1234; Wayne A. Logan, *Liberty Interests in the Preventive State: Procedural Due Process and Sex Offender Community Notification Laws,* 89 J.Crim L. & Criminology 1167, 1174 (1999).

   Presently, all fifty states, the District of Columbia, and the federal government have adopted some form of sex offender registration or

violent offense" and has "been determined . . . to be at risk of committing a subsequent sexually violent offense." Section 792(a)(12). Section 792(b) sets forth the procedure for determining if a person is a sexually violent predator, and provides as follows:

"(b) *Determination; procedure.*—. . . if an individual is convicted of a second or subsequent sexually violent offense, the State's Attorney may request the court to determine before sentencing whether the individual is a sexually violent predator.

(2) If the State's Attorney makes a request . . ., the court shall determine before or at sentencing whether the individual is a sexually violent predator.

(3) In making [the] determination . . ., the court shall consider:

(i) Any evidence that the court considers appropriate to the determination of whether the individual is a sexually violent predator, including the presentencing investigation and sexually violent offender's inmate record;

(ii) Any evidence introduced by the individual convicted; and

(iii) At the request of the State's Attorney, any evidence presented by a victim of the sexually violent offense. . . ."

§ 792(b).

Under the statutory framework, classification as a sexually violent predator requires the trial court to engage in a two-

---

community notification programs. *See Graves,* 364 Md. at 336–37 n. 8, 772 A.2d at 1230 n. 8; Logan, *supra,* at 1172.

"At present, jurisdictions use any (or some combination) of three methods of dissemination: (1) 'public access,' which requires community members to request information from a given jurisdiction's registry . . .; (2) Internet web-site access; and (3) affirmative community notification by law enforcement, which can involve the use of informational fliers and door-to-door visits by police."

Logan, *supra,* at 1174 n. 35; *see, e.g.,* ALA CODE § 15–20–21(a)(2) (1999); § 15–20–22(a) (authorizing community notification by "flyer," which contains, *inter alia,* offense information, a photo, and the name and home address of the registrant, and which is distributed primarily by hand, posting, local newspaper, and the Internet).

step analysis: first, the court must determine if the defendant has committed more than one "sexually violent offense," as defined in § 792(a)(11); second, the court must determine whether the person is at risk for committing additional sexually violent offenses. *See* § 792(a)(12); *Graves,* 364 Md. at 340, 772 A.2d at 1233. The finding that a defendant qualifies as a sexually violent predator subjects him or her to the registration and notification requirements of the statute at the time of release. *See* § 792(a)(7), (c). The registrant must provide the supervising authority with a signed statement that includes his or her name, address, place of employment, Social Security number, and a description and location of the qualifying criminal conduct. *See* § 792(d)(1). As a sexually violent predator, petitioner was required to register every ninety days for a period of ten years. *See* § 792(d)(4). Section 792 permits the Department of Public Safety and Correctional Services to post on the Internet a current listing of each registrant's name, offense, and other identifying information. *See* § 792(j)(6). In the time period since the case *sub judice* was argued before this Court, the Department has begun to post registry information on the Internet.

Petitioner argues that the sexual predator registration statute is a punitive statute that imposed an additional penalty upon him and that, therefore, based upon *Apprendi,* due process requires that future risk of re-offending be proven to a jury beyond a reasonable doubt. Petitioner argues that requiring registration as a sexually violent predator, pursuant to § 792, imposes an additional burden, which has the effect of increasing his sentence. He points to the legislative history of § 792, along with the burden and stigma of registration, maintaining that it demonstrates that it constitutes additional punishment. Petitioner argues, in the alternative, that even if a jury finding is not required under *Apprendi,* petitioner was entitled to have the trial court make explicit factual findings regarding the conditions precedent to registration on the record below. Petitioner concedes his current and prior convictions, but argues that the trial court made no finding regarding the risk of committing a future sexually violent

offense, as required by § 792(a)(12). Petitioner further argues that the trial court erred because the State put on no evidence regarding petitioner's potential future conduct and that evidence of petitioner's prior record, standing alone, cannot justify a finding of future risk.

██ Petitioner's *Apprendi* challenge to his conviction under the sexual predator registration statute was essentially considered, albeit in a different context, and rejected by this Court in *Young v. State,* 370 Md. 686, 806 A.2d 233 (2002). In that case, Young challenged the imposition of sexual offender registration as a condition of his probation, relying, like petitioner, on *Apprendi* to argue that registration was a punishment that could not be imposed absent a jury determination beyond a reasonable doubt of the predicate facts necessary for its imposition. We rejected that challenge, holding that registration under § 792 did not constitute punishment in the constitutional sense. *See id.* at 692, 806 A.2d at 236. We also held that the factual findings predicate to the imposition of registration did not expose him to a greater penalty than the prescribed statutory maximum otherwise available. *See id.* at 636, 806 A.2d at 239. The same reasoning is applicable in the case *sub judice.* Therefore, based on *Young,* in the instant case, due process did not require that a jury find the risk of committing a future sexually violent offense, as required by § 792(a)(12), beyond a reasonable doubt.

██ We conclude, however, that the trial court erred in failing to find, on the record, the factual predicate necessary for finding that petitioner was a sexually violent predator as defined by the statute. The sentencing court merely found that "the defendant in this case, Mr. Sweet, would qualify as one who has to comply with the violence [sic] sex offender registration." As we have indicated, before an offender may be required to register as a sexually violent predator, the sentencing court must make two findings: that the individual has been convicted of a second or subsequent sexually violent

offense and that the individual is *at risk of committing a subsequent sexually violent offense.*

Petitioner's interest in not being designated as a sexually violent predator is great and the State has an interest in making the determination that a convicted offender should be required to register pursuant to § 792 an accurate one in effectuating the remedial purposes of the statute. Therefore, the guarantees secured by the Due Process Clause of the Fourteenth Amendment require that § 792 be interpreted to require that the State prove the facts predicate to sex offender registration to the sentencing judge by a preponderance of the evidence prior to imposition of registration requirements. A sentencing court, in implementing the mandate of § 792, should state, on the record, its reasons for making a determination that the offender is required to register pursuant to § 792,[1] providing valuable assistance to appellate courts on review.

The record before us is devoid of any indication that the sentencing court had considered petitioner's future risk, as the statute required, or that the court found, by a preponderance of the evidence, that petitioner is at risk to commit a subsequent violent offense.

### III. *Voir Dire*

During *voir dire,* petitioner requested that the trial court ask the following question of the venire: "(32) Do the charges stir up strong emotional feelings in you that would affect your ability to be fair and impartial in this case?" The court declined to pose the question.

The Court's decision in petitioner's case is essentially controlled by our recent decision in *State v. Thomas,* 369 Md. 202, 798 A.2d 566 (2002). In that case, we held that it was an abuse of discretion for the trial court to refuse to ask the

---

4. Maryland Rule 4–342(f) states that a court "ordinarily shall state on the record its reasons for the sentence imposed." Although registration requirements may be imposed as a condition of probation, the rationale expressed in the Rule is applicable.

venire panel if any of them harbored "strong feelings regarding violations of the narcotics laws" in a trial in which the defendant was charged with possession and distribution of a controlled dangerous substance. *See id.* at 204, 798 A.2d at 567. We reasoned that the inquiry was directed at biases, specifically those related to Thomas's alleged criminal act, that, if uncovered, would be disqualifying when they impaired the ability of the juror to be fair and impartial. *See id.* at 211, 798 A.2d at 571. The rationale of *Thomas* in this regard is fully applicable to the instant case. Accordingly, we hold that the trial court abused its discretion in failing to pose petitioner's requested *voir dire* question, and petitioner is entitled to a new trial.

*JUDGMENT OF THE COURT OF SPECIAL APPEALS REVERSED. CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO REVERSE THE JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AND REMAND THE CASE TO THAT COURT FOR A NEW TRIAL. COSTS IN THIS COURT AND THE COURT OF SPECIAL APPEALS TO BE PAID BY MONTGOMERY COUNTY.*

BELL, C.J. and ELDRIDGE, J., concur and dissent.

BATTAGLIA, J., concurs and dissents.

BELL, Chief Judge.

I agree that the judgment of the Court of Special Appeals must be reversed and that the petitioner, Christopher Sweet, is entitled to a new trial. That is the case for the two reasons Judge Raker explains. Pursuant to *State v. Thomas,* 369 Md. 202, 798 A.2d 566 (2002), the prospective jurors were required to be voir dired with respect to whether the charges against the petitioner, second degree assault and third degree sexual offense against a minor, stirred up in them strong emotional feelings that would affect their ability to be fair and impartial in the trial of the case. Moreover, the trial court never found the factual predicate underlying the factual finding that the petitioner was a sexually violent predator. Therefore, I con-

cur in the judgment. The majority also concludes, and holds, however, that should that latter finding be made, requiring registration is not punishment and, thus, is not subject to proof pursuant to *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). I do not find the rationale underlying that holding to be at all persuasive.

In *Young v. State,* 370 Md. 686, 806 A.2d 233 (2002), the petitioner was ordered to register as a sexual offender, *see* Md.Code art. 27, § 792(a)(6)(vii) (1957, 1996 Repl.Vol., 1998 Supp.),[1] pursuant to § 792(c). Although the registration requirement was pursuant to § 792, the obligation to register was made a condition of the petitioner's probation. The petitioner challenged the order to register as a sexual offender. Relying on *Apprendi,* he argued that registration was punishment and, thus, it could not be imposed without a jury determination, beyond a reasonable doubt, of the facts necessary for its imposition, in that case, because the violation that triggered § 792(a)(6)(vii)'s application to the petitioner, the minority of the victim was critical, that the victim was under the age of eighteen years of age. To reach that conclusion, the petitioner applied the "intent-effects" analysis, a two part test, gleaned from *Kansas v. Hendricks,* 521 U.S. 346, 361, 117 S.Ct. 2072, 2082, 138 L.Ed.2d 501, 515 (1997) and *Hudson v. United States,* 522 U.S. 93, 99–100, 118 S.Ct. 488, 493–94, 139 L.Ed.2d 450, 459 (1997).

Also applying an "intent-effects" test, this one a three part one gleaned from *Hendricks* and *United States v. Ursery,* 518 U.S. 267, 288, 116 S.Ct. 2135, 2147, 135 L.Ed.2d 549, 568 (1996), the majority rejected Young's argument. 371 Md. at 8, 806 A.2d at 270. It held that registration under § 792 is not punishment and that, in any event, the factual findings necessary to ordering a defendant to register did not, in that case,

---

1. Md.Code art. 27, § 792 (1957, 1996 Repl.Vol., 1998 Supp.) was repealed and reenacted by 2001 Md. Laws, ch. 10, § 2, effective October 1, 2001, and codified at Md.Code art. 27, § 792, §§ 11–701–11–702 and 11–703–11–721 (1957, 1996 Repl.Vol., 1998 Supp.). By Md. Laws, ch. 221, also effective October 1, 2001, § 11–702.1, pertaining to the retroactive application of the registration law, was added.

expose Young to greater punishment. *Id.* at 696, 806 A.2d at 239.

Noting that the petitioner, although a violent sexual predator, rather than a sexual offender, makes a similar argument as Young made, the majority states that "the same reasoning is equally applicable in the case sub judice." 371 Md. 1, 8, 806 A.2d 265, 270 (2002). It therefore holds, "based on *Young*, in the instant case, due process did not require that a jury find a risk of committing a future sexually violent act, as required by § 792(a)(12)." *Id.*

Like the majority in *Young*, I did an extensive analysis of the cases and applied the factors listed in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), a part of both "intent-effects" tests. I concluded, relying on *Kansas v. Myers*, 260 Kan. 669, 923 P.2d 1024 (1996), *cert. denied*, 521 U.S. 1118, 117 S.Ct. 2508, 138 L.Ed.2d 1012 (1997) and *Doe v. Otte*, 259 F.3d 979 (9th Cir.2001), *cert. granted*, 534 U.S. 1126, 122 S.Ct. 1062, 151 L.Ed.2d 966 (2002), and noting the breadth of the public disclosure of registrant information, that the Maryland sex offender registration statute is punitive.[2] Accordingly, *Apprendi* applied and, because the order was made by the court without any determination by a jury as to the predicate facts qualifying Young for sexual offender status, I dissented from both the rationale of the majority and its judgment.

---

**2.** I was persuaded, as well, by the fact that the registration was ordered as a condition of probation, pointing out:

"The majority acknowledges that the court ordered registration as a condition of probation, but argues only that it was pursuant to § 792; it does not argue that, as the trial court apparently believed, ... that the registration was consistent with its authority to fashion conditions of probation. That is not surprising since conditions of probation are clearly punishment. See *Spielman v. State*, 298 Md. 602, 610, 471 A.2d 730, 734 (1984) ("It hardly can be contended that one who has been ordered to pay restitution, as a condition of probation, and is subject to revocation of that probation for failure to make payment, has not received punishment."). The trial court also ordered that the petitioner obtain psychological treatment. Under the majority's view, that also is not punishment, presumably because it is intended to be remedial."

For the same reasons, I would reach a similar result in this case. Indeed, this is a stronger case since the effect of the community notification provisions is even more damaging for sexually violent predators and the registration provisions are substantially more onerous. *See* § 792(g)(3) [3] and § 792(d)(4).[4] Requiring registration every 90 days for life is much like, but certainly more burdensome than, the duty imposed on other defendants, after conviction, to report regularly to a probation officer or to comply with the conditions of supervised release.

Therefore, I dissent from that portion of the majority opinion holding that registration under the sexual offender registration statute is not punishment.

Judge ELDRIDGE joins in the views herein expressed.

BATTAGLIA, J.

While I concur with the majority's reasoning as to Part II, I must dissent from the majority's decision in Part III regarding voir dire for the reasons set forth in my dissenting opinion in *State v. Thomas*, 369 Md. 202, 798 A.2d 566 (2002). Accord-

---

**3.** Pertaining to sexually violent predators, § 792(g)(3) provides:

"(3)(i) Every 90 days, the local law enforcement agency shall mail a verification form, which may not be forwarded, to the last reported address of a sexually violent predator.

"(ii) Within 10 days after receiving the verification form, the sexually violent predator shall sign the form and mail it to the local law enforcement agency.

"(iii) Within 5 days after obtaining a verification form from a sexually violent predator, a local law enforcement agency shall send a copy of the verification form to the Department."

**4.** Section 792(d)(4), as relevant, provides:

"(4) A sexually violent predator shall register every 90 days in accordance with the procedures described in subsection (g)(3) of the section and for the term provided under paragraph (5)(ii) of this subsection.

\* \* \* \*

"(5) The term of registration is:

\* \* \* \*

"(ii) Life if:

"1. The registrant has been determined to be a sexually violent predator in accordance with the procedures described in subsection (b) of this section."

ingly, I would affirm the decision of the Court of Special Appeals.