997 A.2d 154

**Jamal CHARLES AND Dwayne DRAKE**

v.

**STATE of Maryland.**

**Dwayne Drake and Jamal Charles**

v.

**State of Maryland.**

**Nos. 110, 114 Sept. Term, 2009.**

Court of Appeals of Maryland.

June 18, 2010.

Jon S. Cardin (Cardin and Gitomer, PA, of Baltimore, MD), on brief, for petitioners in No. 110, Sept. Term, 2009.

Sarah Page Pritzlaff, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, of Baltimore, MD), on brief, for respondent in Nos. 110 and 114, Sept. Term, 2009.

David P. Kennedy, Asst. Public Defender (Paul B. DeWolfe, Public Defender, of Baltimore, MD), on brief, for petitioners in No. 114, Sept. Term, 2009.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

BATTAGLIA, J.

We are asked to consider whether Dwayne Drake and Jamal Charles, Petitioners, are entitled to a new trial, because the judge who presided over their joint trial propounded a question during voir dire asking whether the jury could not "convict" them without "scientific evidence."

Drake and Charles were tried together before a jury in the Circuit Court for Baltimore City on charges stemming from the death of Bryant Jones and were convicted of second-degree murder and use of a handgun in a felony or crime of violence. Drake was also convicted of wearing, carrying, or transporting a handgun.[1] Drake and Charles noted separate appeals to the Court of Special Appeals, which were consolidated,[2] and the intermediate appellate court affirmed the convictions in a reported opinion, *Drake and Charles v. State,* 186 Md.App. 570, 975 A.2d 204 (2009). Drake presents the following questions on certiorari:

---

1. Charles was acquitted of wearing, carrying, or transporting a hand-gun. Both Drake and Charles were acquitted of first-degree murder and conspiracy to commit first-degree murder.

2. The appeals were consolidated pursuant to Rule 8–421(b), governing docketing of appeals, which states:
   (b) **Separate appeals on same record.** All appeals on the same record, whether in the same action or in two or more actions consolidated in the lower court, shall be docketed as one action on appeal.

1. Did the trial court err in asking the jury on voir dire whether they would be unable to convict the defendant in the absence of "scientific" evidence?

2. Did the trial court unduly restrict defense counsel's closing argument by prohibiting placing the reasonable doubt standard in the context of other standards of proof?

*Drake v. State,* 411 Md. 355, 983 A.2d 431 (2009). Although Charles presented two questions in his Petition for Writ of Certiorari, we granted certiorari solely with respect to whether the trial judge unduly restricted closing arguments:

1. Does a judge have the right to restrict summation and prohibit an attorney from putting law, given by the judge in instruction, into context as warranted by the specific facts of a case?

*Charles v. State,* 411 Md. 355, 983 A.2d 431 (2009).[3]

We shall hold that the trial judge erred in propounding a voir dire question asking whether the jury could not "convict" the defendants. Therefore, we shall reverse the judgments of the Court of Special Appeals and remand for a new trial.

**Background**

Drake and Charles were each charged in the Circuit Court for Baltimore City with first-degree murder, conspiracy to commit first-degree murder, second-degree murder, use of a handgun in a felony or crime of violence, and wearing, carrying, or transporting a handgun in connection with the shooting

---

**3.** In his Petition for Writ of Certiorari, Charles also presented a global question concerning whether the totality of the trial judge's conduct constituted plain error:

Did the totality of the trial judge's behavior rise to the level of plain error which deprived both Charles and Drake of their Constitutional rights to a fair and impartial trial?

In this regard, Charles asserted that the voir dire question propounded by the trial judge was "prejudicial." Because our disposition of the voir dire issue will result in a new trial, and because Drake and Charles were tried jointly, granting a new trial for Drake, only, would produce an absurd result, and so, we will reverse and remand both Drake's and Charles's cases. We will not address the closing argument question raised by Drake and Charles, however, because of our disposition of the voir dire question.

death of Bryant Jones at his daughter's sixteenth birthday party. Prior to trial, the State's Attorney submitted three voir dire questions concerning "CSI-type" [4] scientific evidence. Over defense counsel's objection, the trial judge propounded a single question, which he ostensibly drafted, that being:

> I'm going to assume that many of you, from having done a few of these, watch way too much TV, including the so-called realistic crime shows like CSI and Law and Order. I trust that you understand that these crime shows are fiction and fantasy and are done for dramatic effect and for this dramatic effect they purport to rely upon, "scientific evidence," to convict guilty persons. While this is certainly acceptable as entertainment you must not allow this entertainment experience to interfere with your duties as a juror. Therefore, *if you are currently of the opinion or belief that you cannot convict a defendant without "scientific evidence,"* regardless of the other evidence in the case and regardless of the instructions that I will give you as to the law, please rise.... [5]

(Emphasis added).

The jury found Drake and Charles guilty of second degree murder and use of a handgun in a felony or crime of violence. Drake also was convicted of wearing, carrying, or transporting a handgun. Drake was sentenced to consecutive terms of 30 years' imprisonment for second-degree murder and ten years' imprisonment, five without possibility of parole, for use of a handgun in a felony or crime of violence. Charles was sentenced to consecutive terms of 30 years' imprisonment for second-degree murder and 20 years' imprisonment, five without possibility of parole, for use of a handgun in a felony or crime of violence.

---

4. Both parties characterize "CSI-type" evidence as fictional scientific evidence portrayed on forensic crime dramas, such as the CSI series, presently presented on CBS.

5. Six members of the panel responded affirmatively, although all six were stricken for cause for other reasons.

The Court of Special Appeals affirmed,[6] *Drake and Charles v. State*, 186 Md.App. 570, 580, 975 A.2d 204, 210 (2009), reasoning that the voir dire question was appropriate, because "it was an inquiry made to identify venire persons who, without CSI-type evidence, would not convict any defendant" and emphasizing that "the scope and form of questions propounded during voir dire generally are within the trial court's discretion."

## Introduction

Our focus in the present case is whether the Circuit Court erred in propounding a voir dire question concerning whether prospective jurors could not "convict" Drake and Charles in the absence of "CSI-type" scientific evidence.

There is significant debate about whether there truly is a "CSI effect," namely, the impact that viewing forensic crime dramas has upon juror behavior. *See, e.g.*, Dennis M. Sweeney, *The "CSI Effect" A Judge's Viewpoint: How Do Courtroom Dramas Affect the Work of the Courts?*, Justice Matters, Spring/Summer 2009, at 4. Prosecutors assert oftentimes that "the show's perfectly packaged crime stories ha[ve] created unrealistic expectations among potential jurors about the kind of evidence they will see in a real-life trial." Cynthia Di Pasquale, *Beyond the Smoking Gun: Maryland's Legal Community Debates the "CSI Effect,"* The Daily Record, Sept. 8, 2006, at 1B (highlighting a panel discussion at the University

---

**6.** Drake and Charles raised four issues in the Court of Special Appeals, namely:

I.  Did the trial court err in asking the jury on voir dire whether they could "not convict a defendant without quote, scientific evidence, close quote, regardless of the other evidence in the case and regardless of the instructions that I will give you as to the law"?

II.  Did the trial court err in denying the defendants' motion for mistrial after criticizing defense counsel's cross-examination in front of the jury?

III.  Did the trial court err in allowing the State to elicit testimony that a witness was afraid to cooperate with detectives?

IV.  Did the trial court unduly restrict defense counsel's closing argument?

*Drake and Charles v. State*, 186 Md.App. 570, 575–76, 975 A.2d 204, 207 (2009).

of Maryland Law School entitled "The CSI Effect on Criminal Prosecutions: Truth or Fiction?"). Prosecutors contend that the "CSI effect" has made their job of obtaining convictions more difficult, because resources to do sophisticated testing, such as DNA analysis, are not available in every case. Andrew P. Thomas, *The CSI Effect: Fact or Fiction*, 115 Yale L.J. Pocket Part 70 (2006), http://www.yalelawjournal.org/images/pdfs/32.pdf (last visited June 16, 2010) (noting "almost eight out of ten Maricopa County prosecutors believe that jurors are disappointed in the lack of forensic evidence presented at trial"); *see also* Jeffrey Toobin, *The CSI Effect: The Truth About Forensic Science*, The New Yorker, May 7, 2007, *available at* http://www.newyorker.com/reporting/2007/05/07/070507fa_fact_toobin (comparing testimony of N.Y.P.D. crime unit criminalists with that of fictional "CSI" criminalists).

Some judges and academics, on the other hand, are more skeptical about the purported "CSI effect," based upon empirical studies that suggest that CSI viewers were not more or less likely to acquit a defendant without scientific evidence than non-CSI viewers. Donald E. Shelton, *The 'CSI Effect': Does It Really Exist?*, *http://www.ojp.usdoj.gov/nij/journals/259/csi-effect.htm* (last visited June 15, 2010) (surveying more than one-thousand jurors in Ann Arbor, Michigan); *see also* Simon A. Cole & Rachel Dioso–Villa, *The CSI Effect: The True Effect of Crime Scene Television on the Justice System*, 41 New Eng. L.Rev. 435, 455 (2007) (asserting the "CSI effect" is premised only on anecdotal reports of juries acquitting in cases with purportedly strong circumstantial evidence); *see also* Tom. R. Tyler, *Viewing CSI and the Threshold of Guilt: Managing Truth and Justice in Reality and Fiction*, 115 Yale L.J. 1050 (2006). Recently, during oral arguments in an appeal involving a comment by a trial judge to a jury, "And I remind you that this is real life and not CSI," the Chief Justice of the Massachusetts Supreme Judicial Court remarked that talk about "CSI" should be banned in courtrooms across the state. Caryn Tamber, *The CSI effect, in Maryland and Massachusetts*, The Daily Record On the Record Blog

(Dec. 11, 2009), http://mddailyrecord.com/ontherecord/2009/12/11/the-csieffect-in-maryland-and-massachusetts/.

In outlining the context of the debate we do not intend to enter into the fray; whether a voir dire inquiry related to the purported "CSI effect" is appropriate at a theoretical level, we leave to another day.[7] The issue before us is really the appropriateness of the language used in the inquiry. Drake and Charles assert, in this regard, that the trial judge abused his discretion by essentially instructing the jury to convict the defendants "on the non-scientific evidence that they would hear in the case." The State counters that the way a question is posed is within the sound discretion of the trial judge, and the question really sought to identify "those jurors who would require fictional CSI-type evidence" and disregard other evidence.

**Discussion**

■■■ The primary purpose of voir dire is to ensure a fair and impartial jury. *Moore v. State,* 412 Md. 635, 644–45, 989 A.2d 1150, 1154–55 (2010); *Stewart v. State,* 399 Md. 146, 158, 923 A.2d 44, 51 (2007); *State v. Logan,* 394 Md. 378, 395, 906 A.2d 374, 384 (2006); *Curtin v. State,* 393 Md. 593, 600, 903 A.2d 922, 926 (2006); *White v. State,* 374 Md. 232, 240, 821 A.2d 459, 463 (2003); *Dingle v. State,* 361 Md. 1, 9, 759 A.2d 819, 823 (2000); *Boyd v. State,* 341 Md. 431, 435, 671 A.2d 33, 35 (1996). The process entails examination of prospective jurors through questions propounded by the judge (or either of the parties, if allowed by the judge) to determine the existence of bias or prejudice and, literally translated, means "to say the truth." *Curtin,* 393 Md. at 600, 903 A.2d at 926, quoting *Bedford v. State,* 317 Md. 659, 670, 566 A.2d 111, 116 (1989). The manner of voir dire is governed by Rule 4–312, which states in relevant part:

---

7. The State urges that the question propounded by the trial judge was proper, because it was designed to identify those jurors, who, because of a mind-set shaped by viewing forensic crime dramas, "would be unable to impartially evaluate the evidence," citing *Foster v. State,* 304 Md. 439, 499 A.2d 1236 (1985). Our concern here is with the language of the question, rather than its object.

(d) **Examination and challenges for cause.** (1) Examination. The trial judge may permit the parties to conduct an examination of qualified jurors or may conduct the examination after considering questions proposed by the parties. If the judge conducts the examination, the judge may permit the parties to supplement the examination by further inquiry or may submit to the jurors additional questions proposed by the parties. The jurors' responses to any examination shall be under oath. On request of any party, the judge shall direct the clerk to call the roll of the array and to request each qualified juror to stand and be identified when called.

We have previously considered, under an abuse of discretion standard, whether the facts and circumstances of a case mandate a particular voir dire question to probe prospective jurors' bias.

We have rejected, in *Stewart v. State,* 399 Md. 146, 923 A.2d 44 (2007), a "shot gun" approach to voir dire, in a case in which the defendant, charged with child abuse and sexual offenses, submitted fifty-two proposed voir dire questions, two of which involved prospective jurors' feelings regarding violations of narcotics laws, wholly unrelated to the defendant's case. Although the trial judge presented several of the proposed questions, the defendant contended that the court's refusal to ask the remaining questions violated his right to a fair and impartial jury. We disagreed, determining that the trial judge did not abuse his discretion, because none of the proposed inquiries dealt specifically with the facts of the case, the crime, the witnesses, or the defendant himself, and the questions were "too broad and general to support a challenge for cause." *Id.* at 165, 923 A.2d at 55.

Rather, our tenets of voir dire favor inquiries tailored to the likely issues to be presented in the case, so juror biases directly related to the crime, the witnesses, or the defendant, may be uncovered. In *State v. Thomas,* 369 Md. 202, 798 A.2d 566 (2002), the defendant, charged with possession and distribution of cocaine, requested that the trial judge ask whether "any member of the jury panel [had] such strong feelings

regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts...." *Id.* at 204, 798 A.2d at 567. We concluded that the trial judge's failure to propound the question constituted an abuse of discretion, because drug laws have engendered strong feelings and reactions that " 'may hinder a juror's ability to serve.' " *Id.* at 212, 798 A.2d at 572, quoting *Thomas v. State,* 139 Md.App. 188, 205, 775 A.2d 406, 416 (2001).

In the same year, in *Sweet v. State,* 371 Md. 1, 806 A.2d 265 (2002), we considered whether the defendant, on trial for molesting an eleven-year-old girl, was entitled to a voir dire question inquiring whether "the charges stir up strong emotional feelings in you that would affect your ability to be fair and impartial...." *Id.* at 9, 806 A.2d at 270–71. We determined that the trial court's refusal to pose the requested question was an abuse of discretion, because the inquiry was directed at biases, specifically related to the alleged criminal act, that, if uncovered, would necessarily disqualify a prospective juror. *Id.* at 9–10, 806 A.2d at 271.

Similarly, in *Curtin v. State,* 393 Md. 593, 903 A.2d 922 (2006), we addressed whether inquiry into prospective jurors' feelings concerning "the use of handguns" was mandatory when the defendant was charged with armed robbery. In holding that the trial judge did not abuse her discretion in declining to ask the proposed question, we emphasized that "[w]hether a venireman has strong feelings about handguns would not render him or her more or less likely to convict [the defendant] of the charges on the evidence presented at trial...." *Id.* at 613, 903 A.2d at 934. In other words, the question regarding prospective jurors' "strong feelings concerning the use of handguns" was not specifically tailored, in *Curtin,* to the defendant's case. *See also State v. Logan,* 394 Md. 378, 906 A.2d 374 (2006) (finding no abuse of discretion when the trial judge declined to ask the defendant's improperly phrased question concerning the Not Criminally Responsible defense, but did inquire as to whether members of the panel had experience or training in the mental health field and

also whether prospective jurors would be able to fairly weigh "psychiatric or psychological evidence").

Most recently, in *Moore v. State*, 412 Md. 635, 989 A.2d 1150 (2010), we considered whether the trial judge abused his discretion in declining to ask whether "any prospective juror [would] be more likely to believe a witness for the prosecution merely because he or she is a prosecution witness" and whether "any prospective juror [would] tend to view the testimony of a witness called by the defense with more skepticism than witnesses called by the State, merely because they were called by the defense." We held that the trial court committed reversible error, because the question was necessary when it specifically addressed whether prospective jurors would give State-sponsored witnesses a "presumption of credibility." *Id.* at 663, 989 A.2d at 1166.

The present case, however, presents us with a seminal opportunity to consider the appropriateness of specific language of a voir dire question, rather than the aim of the question itself. Specifically, we consider whether the use of the term "convict" in the heart of the inquiry, rendered the question untenable:

> Therefore, *if you are currently of the opinion or belief that you cannot convict a defendant without "scientific evidence,"* regardless of the other evidence in the case and regardless of the instructions that I will give you as to the law, please rise. . . .

(Emphasis added).

Because we have had occasion to consider similar language in jury instructions, it is useful to consider our reasoning in *State v. Hutchinson*, 287 Md. 198, 411 A.2d 1035 (1980), in which we addressed, in a rape prosecution, whether the trial judge committed reversible error in failing to instruct the jury that it could return a "not guilty" verdict. At the close of the evidence, the trial judge had instructed the jury as follows:

> Now, *the verdict sheet which I will be giving you will show two possible verdicts, Count One guilty of rape in the first degree and Count Two guilty of rape in the second degree*

.... If you find the defendant not guilty of rape in the first degree, then you consider rape in the second degree. If you find the defendant guilty of rape in the first degree, then, of course, you need not consider rape in the second degree.

*Id.* at 201, 411 A.2d at 1037 (alteration in original). In reversing and ordering a new trial, we emphasized that the language of the trial court's instruction did not advise the jury that it could return a verdict of "not guilty"—only "guilty":

While the trial judge instructed the jury that the State had the burden of proving every element of the crime charged, that the defendant was presumed innocent until proven guilty beyond a reasonable doubt and that no inference of guilt could be drawn from the defendant's failure to testify, nowhere in his instructions did the trial judge tell the jury that it could find the defendant not guilty. The State's retort that the defendant did not object is to no avail. If a defendant is entitled to have a jury instructed as to all possible verdicts arising from the evidence, it seems manifest to us that he would have the right to have the jury told that it may find him not guilty. We can envision no right more fundamental to the defendant in a criminal jury trial.

*Id.* at 205–06, 411 A.2d at 1039. Thus, the defendant was entitled to a new trial, because the language of the jury instruction suggested that finding the defendant "guilty" was a foregone conclusion. Like the jury instruction in *Hutchinson*, the voir dire question at issue here suggested that the jury's only option was to convict, regardless of whether scientific evidence was adduced.

Also persuasive is the Mississippi Supreme Court's discussion of a series of voir dire questions concerning the purported "CSI effect" in *Goff v. State*, 14 So.3d 625 (Miss.2009). In *Goff*, the defendant, on trial for murder, alleged that the prosecutor inappropriately sought a promise from the jury during voir dire that it would "convict" the defendant. The prosecutor engaged the venire panel in the following during voir dire:

[Y]ou know, if you watch TV a lot, you probably get to watch—I don't know how many of you—how many of you watch CSI? Well, raise your hand. See, there's a lot of you. A lot of you. It's a very popular show. My kids love it. All right. They're older and they love that show. They like Law and Order.

But, can everybody tell me that they can separate what they see on TV from what you see in the courtroom? I know that sounds like a silly question, but some people go, oh, well, it was on CSI, so how come they don't do it in every case? All right.

And I can tell you how I know, I know CSI and Law and Order are make-believe. If you flip the channel, you may see Scotty beaming somebody else up, and that's on TV. All right?

So, can everybody tell me—and, again, this kind of goes to the burden of proof, you know, about what evidence you have—and *can everyone tell me that they will listen to the evidence and not speculate because they don't have, say, DNA or they don't have fingerprints and things you may see or hear about on CSI?* Can everyone tell me they can do that? Yeah?

*Id.* at 652–53 (emphasis added). The court rejected the defendant's argument regarding prejudice, determining instead that the voir dire questions were phrased using neutral language, and therefore did not constitute error in their propounding. The court further reasoned that the questions properly asked the jurors to "listen to the evidence and return a verdict based upon the evidence presented at trial." *Id.* at 653. The language of the voir dire question in the present case, however, was not neutral, using the term "convict," solely, rather than including its alternative.

The State, nevertheless, refers us to *Corens v. State,* 185 Md. 561, 45 A.2d 340 (1946), also relied on by our intermediate appellate court, to conclude that the voir dire question in the present case is appropriate. In *Corens,* a death penalty case, we addressed the propriety of one of the voir dire questions

propounded, in which the judge inquired whether the prospective jurors were capable of convicting the defendant based upon circumstantial evidence, rather than direct evidence, namely:

> Have you any such conscientious scruple or opinions as would prevent or preclude you from rendering a verdict of guilty in a case where the penalty prescribed by law may be death upon what is commonly called circumstantial evidence?

*Id.* at 563, 45 A.2d at 343. We determined that the trial judge did not abuse his discretion, because "any circumstances which may reasonably be regarded as rendering a person unfitted for jury service may be made the subject of questions and a challenge for cause." *Id.* at 564, 45 A.2d at 343, citing *Whittemore v. State*, 151 Md. 309, 315, 134 A. 322, 324 (1926). Because the issue of capital punishment was before the jury, the question was specifically tailored to determine whether the jury could render a death penalty verdict based upon circumstantial evidence. We reasoned that just as a prospective juror "who has conscientious scruples against capital punishment" can be challenged for cause, a prospective juror who cannot render a death sentence based upon circumstantial evidence can similarly be challenged for cause. *Id.* at 564, 45 A.2d at 343–44. As a result, *Corens* is inapposite to the present case, because the inquiry here was not inextricably linked to the facts and circumstances of the case, but rather, preordained the result.

■ Thus, we conclude that the judge abused his discretion by suggesting to the panel that "convict[ing]" Drake and Charles was the only option in the present case; this suggestive question poisoned the venire, thereby depriving Drake and Charles of a fair and impartial jury. *See Hutchinson*, 287 Md. at 205–06, 411 A.2d at 1039. Therefore, we reverse the judgments of the Court of Special Appeals and remand for a new trial.

**JUDGMENTS OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT**

COURT WITH INSTRUCTIONS TO REVERSE THE
JUDGMENTS OF THE CIRCUIT COURT FOR BALTI-
MORE CITY AND TO REMAND THE CASE TO THAT
COURT FOR A NEW TRIAL. COSTS IN THIS COURT
AND THE COURT OF SPECIAL APPEALS TO BE PAID
BY THE MAYOR AND CITY COUNCIL OF BALTI-
MORE.