# HENRY J. HANDY *vs.* STATE OF MARYLAND.

*Examination of Jurors on Voir Dire in Criminal Cases—Admissibility. of Evidence on Trial for Murder.*

When a juror in a criminal case is sworn upon his *voir dire*, and declared by the Court to be qualified, the prisoner's counsel is not entitled to interrogate such juror generally for the purpose of determining whether or not the defendant's right of peremptory challenge will be exercised; nor is he entitled to require the Court to put to the juror such questions as he may request to be asked for that purpose. The examination of jurors in this respect is committed to the discretion of the trial Court.

At the trial of the defendant for the murder of his wife, where the defense of insanity was not set up, a witness who was with the defendant some hours before the murder was asked, "What was the condition of his mind on that occasion?" Another witness, who was in the company of the prisoner on the day of the homicide and prior thereto, was asked, "What was the manner and conduct of the prisoner at that time?" *Held*, that this evidence is not admissible, since insanity is not relied upon as a defense and the proof that the killing was done with premeditation is undisputed.

Upon the trial of indictment for the murder of the prisoner's wife, he testified on his own behalf that he killed her because he believed she had been guilty of illicit relations with a certain man. Prisoner's counsel read letters written by the alleged paramour to the prisoner's wife and discovered by him, and he was then asked, "What were your feelings and the condition of your mind that morning?" meaning the day he killed his wife. *Held*, that this question was incompetent.

Appeal from the Circuit Court for Wicomico County (PAGE, C. J., and LLOYD, J.)

The cause was argued before McSHERRY, C. J., FOWLER, BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Jas. E. Ellegood* (with whom were *Clarence P. Lankford* and *H. B. Freeny* on the brief), for the appellant.

*William S. Bryan, Jr.,* Attorney-General, *Joseph L. Bailey,* State's Attorney for Wicomico County, and *John H. Handy,*

*Special Counsel*, for the appellee, submitted the case on their briefs.

PEARCE, J., delivered the opinion of the Court.

Henry J. Handy shot and killed his wife under circumstances, disclosed in the record, of extraordinary deliberation and set purpose, and being convicted of murder in the first degree, by a jury in the Circuit Court for Wicomico County, and being sentenced to death, has brought this appeal from rulings of the Court made in the course of the trial.

The first exception arose in this way, as stated in the record. "J. Cleveland White, being called and examined by the Court and sworn on his *voir dire*, and after the usual questions were propounded by the Court, declared by the Court to be a qualified juror, the prisoner's counsel then proposed to ask the juror questions, but the Court declined to allow them to do so, but ruled that the questions could be propounded to the Court for the Court to repeat to the respective jurors, to which ruling the prisoner excepted."

The second exception was taken to the refusal of the Court to propound to Charles Workman, also sworn on his *voir dire*, a question proposed by the prisoner's counsel, viz: whether the juror was a married man, the counsel stating that they desired to enlighten themselves as to the propriety of exercising the right of peremptory challenge.

These two exceptions will be considered together.

The right claimed under the first exception, is the absolute and unqualified right of the prisoner's counsel, after a juror upon his *voir dire* has been by the Court declared to be competent, to interrogate him at pleasure, and without the intervention of the Court, for the purpose of determining whether the right of peremptory challenge shall be exercised; while under the second exception the claim is that the Court is bound to put to the juror any question which counsel may request the Court to put, under the ruling on the first exception.

There is no statute in this State upon the subject, and we

have been referred to no case in this State in which either of these questions has been decided or presented. The decisions in other States are conflicting, but in 12 *Am. & Eng. Ency. of Law*, 1 ed., p. 358, it is said, "In the absence of statute, the true conclusion in regard to such questions seems to be that it lies in the discretion of the Court either to put the questions or to allow the counsel to examine." And on p. 359, "The control of the trial of challenges, and of all the proceedings by which a jury is finally selected from those summoned and from the by-standers, is committed to a wide discretion of the Court." The same doctrine is stated in *Thompson and Merrian on Juries*, secs. 241–243. The practice in the Courts of England is well settled. In *Rex* v. *Edmonds*, 4 Barnw. and Ald. 490, one of the motions for a new trial was made on the ground of opinions supposed to have been expressed by jurors hostile to the defendants cause. CHIEF JUSTICE ABBOTT said, "There was no offer to prove such an expression by any extrinsic evidence, but it was proposed to obtain the proof by questions put to the jurymen themselves. The Lord Chief Baron refused to allow such questions to be answered, and in our opinion he was right in his refusal."

In *Regina* v. *Stewart*, 1 Cox C. C. 174, the head note is as follows: "Where a party has the right of challenge, he is not entitled to ask a juryman questions for the purpose of eliciting whether it would be expedient to exercise such right." The defendants were indicted for larceny of goods from tradesmen; the prisoner's counsel, as each juryman came to the box, asked him whether he was a member of an association for the prosecution of parties committing frauds on tradesmen. BARON ALDERSON said, "It is quite a new course to catechise a jury in this way." Counsel said, "I have a right, my Lord, to challenge; and I submit that I am entitled to ask for information that is necessary for the effective exercise of that right;" to which BARON ALDERSON replied, "I cannot allow you to *cross-examine* the jury. If you like to challenge absolutely, you may do so."

In *Regina* v. *Dowling*, 3 Cox Crim. Cases, 509, "the pris-
oner's counsel, upon a juror being called to the box required
him to be sworn on the *voir dire* in order that he might ex-
amine him with a view to a challenge, if necessary." ERLE,
J., said, "You cannot do that without first stating some ground
for the proceeding;" to which counsel replied, "I cannot say
I have any instructions with regard to this particular individ-
ual," and the Judge said, "then I must refuse your application
unless indeed you can quote some authority upon the subject.
I think it a very unreasonable thing that a juryman should be
cross-examined without your having received any information
respecting him."

From the Courts of this country the following cases may
be cited.

In *Bales* v. *State*, 63 Ala., CHIEF JUSTICE BRICKELL said:
"The proposed examination of Smith, Tucker and Strange, to
ascertain whether they were subject to a challenge for cause,
after they had been examined by the Court, was properly re-
fused. We know of no authority, and we perceive no reason
for any such speculative, inquisitorial practice, consuming
needlessly the time of the Court, and offensive to the persons
subjected to it."

In *State* v. *Creaseman*, 10 Iredell Law Reps. 397, a juror
tendered was challenged by the prisoner for favor, and the
State admitted the cause, and the Court allowed it, but the
prisoner insisted he still had a right to examine him on oath,
and if he appeared indifferent, to elect to take him; but the
Court refused to allow the examination, CHIEF JUSTICE RUF-
FIN saying: "A party has no right to examine the juror, or
any other person, by way of fishing for some ground of ex-
ception. A specific cause must be assigned, and that cause
be denied on the other side, before evidence can be heard, for
until that be done, there is no issue for the decision of triers,
or of the Court in their stead."

In *Powers* v. *Presgroves*, 38 Miss. 240, the Court said: "The
Court may propound to the jurors returned, not only such
interrogatories as are required to ascertain their competency,

but also *in its discretion*, may ask such other questions, not tending to degrade or render the juror infamous, as may test their impartiality, prejudice, or bias. In this mode of investigation counsel have no right to interpose and interrogate jurors themselves, except by direction of the Court, but the whole matter must be left to the sound judgment and judicial discretion of the presiding Judge.

In *State* v. *Zellers*, 2 Halstead (N. J.), 223, the same ruling was made, based upon *Rex* v. *Edmonds*, *supra*, and in *Negro Matilda* v. *Mason and Moore*, 2 Cranch C. C. Reps. 343, it was held that in suits for freedom the Court will not question jurors as they are called up to be sworn, as to their prejudices or pre-possessions in favor of freedom, but leave the parties to their challenge. We are aware that there are decisions to the contrary in other Courts of equal authority and reputation, but such knowledge as we possess of the experience in practice under those decisions does not commend them to our adoption. We agree with the view expressed by the Texas Court of Appeals in *Stagner* v. *State*, 9 Texas Appeals, 440, where it is said: "The Judge should either himself conduct the examination, or at least so far conduct it as to confine it to the point under examination, and not permit it to take so wide a range as to entrap an unwary juror into letting fall some expression not seriously and understandingly made, and from which it may be afterwards argued that he was not an impartial juror in the case. The juror should be treated with the utmost fairness in the examination, and not be subjected to the rigid cross-questioning sometimes indulged in in cross-examining a witness who is testifying in the case." If the whole course of such examination is in the discretion of the Court, there would of course, in no event be any appeal from rulings made therein, but apart from that view, it would be sufficient upon the first exception, to say that as no specific question was propounded, and as counsel failed to declare the character and purpose of the undisclosed questions which they wished to ask, there could be no error in the ruling, unless it were in requiring all questions to be addressed to the Court, and by them put to

the juror, and we have already said we are of opinion this was clearly in the discretion of the Court. If however, this exception was intended to raise the same question as the second, viz, the right to cross-examine the juror in order to determine the expediency of a peremptory challenge, the views we have expressed upon that question are applicable to both exceptions.    But as to the second exception, there was another all sufficient reason for the ruling.    It was susceptible of only two answers, either that he was, or was not, a married man, and in either event, the answer is clearly immaterial. *Gillespie* v. *State*, 92 Md. 174.    The record shows that the traverser killed his wife because he believed she allowed and encouraged improper attentions from one Thomas, but neither in law nor in common sense can it be supposed that competency to judge of the effect of such provocation is found exclusively in married men, and if we may indulge in speculation as to the reason behind this question, imagination can suggest none more substantial than that we have hazarded.

We have examined all the Maryland cases referred to in the appellant's brief in connection with these exceptions and we find in them nothing decided, in conflict with the views we have here expressed.

The third exception was taken to the refusal of the Court to allow Capt. Hoffman who had known the prisoner ten years intimately, and was with him on the prisoner's boat when he went ashore declaring that he was going to kill his wife, to state what was the condition of his mind at that time, counsel saying that they did not intend to set up insanity, but only to show a condition of the mind.

Certain letters which were found by the prisoner in his wife's trunk and which he testified he knew were written to her by Thomas, were read to the jury while he was on the stand, and he was asked "what were your feelings and the condition of your mind that morning," meaning the day he killed his wife.    The Court refused to allow an answer to this question, and the 4th exception was taken to this ruling.

Another witness, Carl Hoffman, after testifying that he was

on the prisoner's boat the Friday morning before the shooting, and took him ashore, was asked "What was the manner and conduct of the prisoner at that time?" and the 5th exception was taken to the refusal to allow this to be answered. These three exceptions are not distinguishable. None of the testimony thus excluded tended to show insanity or any degree of irresponsibility for the prisoner's act, nor was it offered for that purpose.

In *Garlitz case*, 71 Md. 302 and 303, it was proposed to ask a witness the following questions: 1st. "What was the demeanor, appearance, conduct and bearing of the prisoner on that evening;" 2nd. "What was the temperament and disposition of the prisoner," both of which were refused by the Court, and in affirming the judgment in that case, this Court said, "It would be difficult to suggest any object for which such evidence would be admissible."

In *Spencer's case*, 69 Md. 29, where there was evidence of deliberation and premeditation in the killing, and where the prisoner charged that the murdered man had committed a felonious assault upon his wife, causing her death, his counsel asked him when on the stand as a witness, whether there was any change in his mental condition after the death of his wife, and if so, what the change was and how it affected him, but refused to follow this up with other proof tending to show that he was insane, or irresponsible at the time of the killing. The Court refused this question, and that ruling was affirmed, this Court saying it was neither admissible to prove insanity, nor in the face of the undisputed evidence of deliberation and premeditation, to affect the degree of crime. These cases are quite conclusive upon these exceptions.

*Judgment affirmed.*

(Decided March 23rd, 1905.)