903 A.2d 922

**Raymond Alan CURTIN**

v.

**STATE of Maryland.**

**No. 114, Sept. Term, 2005.**

Court of Appeals of Maryland.

July 31, 2006.

594

Jennifer P. Lyman, Assigned Public Defender, The George Washington University Law School, Washington, DC, on brief, for petitioner.

Sarah Page Pritzlaff, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), Baltimore, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA and GREENE, JJ.

BATTAGLIA, J.

Petitioner, Raymond Alan Curtin, asks us to determine whether the trial court abused its discretion when it refused to ask his proposed jury voir dire question, "Does anyone have any strong feelings concerning the use of handguns that they would be unable to render a fair and impartial verdict based on the evidence?" [1] We hold that, because the question was not one that, if answered in the affirmative, would have provided a basis for a strike for cause in the instant case, the trial court did not abuse its discretion in denying the requested voir dire question and therefore affirm the judgment of the Court of Special Appeals.

## I. Background

On April 25, 2003, at approximately 1:30 in the afternoon, two masked men entered the First Union Bank in Bowie, Maryland, and ordered everyone to get down. While one of the masked men stood by the entrance to the bank with a gun, the other jumped over the counter and ordered the tellers to give him the money and "no one will get hurt." After emptying all of the tellers' cash drawers, the two men fled the bank.

---

[1]. We granted certiorari to address Mr. Curtin's question:
Whether the trial court erred by refusing to ask defendant's proposed voir dire questions regarding potential juror bias on the subject of guns.
390 Md. 500, 889 A.2d 418 (2006).

Mr. Curtin was subsequently arrested and charged with three counts of robbery with a deadly weapon in violation of Section 3–403 of the Criminal Law Article,[2] three counts of robbery in violation of Section 3–402 of the Criminal Law Article,[3] six counts of first degree assault in violation of Section 3–202 of the Criminal Law Article,[4] six counts of the use of a handgun in the commission of a crime of violence in violation of Section 4–204 of the Criminal Law Article,[5] and

---

**2.** Maryland Code (2002), Section 3–403 of the Criminal Law Article provides:

**Robbery with a Dangerous Weapon**
(a) *Prohibited.*—A person may not commit or attempt to commit robbery under § 3–402 of this subtitle with a dangerous weapon.
(b) *Penalty.*—A person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 20 years.

**3.** Maryland Code (2002), Section 3–402 of the Criminal Law Article states:

**Robbery**
(a) *Prohibited.*—A person may not commit or attempt to commit robbery.
(b) *Penalty.*—A person who violates this section is guilty of a felony and on conviction is subject to imprisonment not exceeding 15 years.

**4.** Maryland Code (2002), Section 3–202 of the Criminal Law Article states in relevant part:

**Assault in the first degree.**
(a) *Prohibited.*—(1) A person may not intentionally cause or attempt to cause serious physical injury to another.
(2) A person may not commit an assault with a firearm, including:
(i) a handgun, antique firearm, rifle, shotgun, short-barreled shotgun, or short-barreled rifle, as those terms are defined in § 4–201 of this article.

**5.** Maryland Code (2002), Section 4–204 of the Criminal Law Article states in relevant part:

**Use of a handgun or antique firearm in commission of crime.**
(a) *Prohibited.*—A person may not use an antique firearm capable of being concealed on the person or any handgun in the commission of crime of violence, as defined in Article 27, § 441 of the Code, or any felony, whether the antique firearm or handgun is operable or inoperable at the time of the crime.
Maryland Code (1957, 1996 Repl.Vol.), § 441 of Article 27 states in relevant part:
(e) *Crime of violence.*—"Crime of violence" means:
\* \* \*
(12) robbery;

one count of common law conspiracy.[6] Mr. Curtin proposed twenty-one voir dire questions, one of which queried:

Does anyone have any strong feelings concerning the use of handguns that they would be unable to render a fair and impartial verdict based on the evidence?

The trial judge refused to ask the handgun question; however, after a brief elucidation of the facts, posed a number of voir dire questions, which included:

In this case the State alleges that on April 25th, 2003, at approximately 1:30, the defendant along with a co-defendant, who is not on trial today, robbed, at gun point, the First Union Bank on Annapolis Road in Bowie, Prince George's County, Maryland.

\* \* \*

Has any member of the jury panel ever worked in a bank, a quick market such as the 7–Eleven or Wa–Wa, or other such establishment?

\* \* \*

Does any member of the jury panel belong to, support, contribute to, or have any association with any group or organization that has among its purposes taking an advocacy position to influence the government on issues relevant to the criminal justice system, for example, Mothers Against Drunk Drivers, Students Against Drunk Drivers, the NRA, the Stephanie Roper Committee, and the like?

---

(13) robbery with a dangerous or deadly weapon;

\* \* \*

(u) *Handgun.*—"Handgun" means any firearm with a barrel less than 16 inches in length including signal, starter, and blank pistols.

6. At common law, the crime of conspiracy consists of an understanding or plan between two or more persons to commit an unlawful act. *Piracci v. State,* 207 Md. 499, 515–16, 115 A.2d 262, 269 (1955).

598

\* \* \*

Does any members of the jury panel have any ethical, moral or religious obligation which would prevent you from sitting as a juror in this case?

\* \* \*

Has any member of the jury panel or members of your immediate family ever been the victim of a crime, or arrested for, charged with or convicted of a crime, excluding routine motor vehicle violations?

Throughout his trial, Mr. Curtin maintained he was not a participant in the robbery and, alternatively, that the gun used in the robbery was not a real gun. The jury convicted him on all counts, and the trial judge sentenced him to twenty-five years in prison without the possibility of parole and an additional five years of supervised probation with drug and alcohol counseling. Mr. Curtin thereafter filed a timely motion for reconsideration of his sentence, which was denied, and he subsequently noted an appeal to the Court of Special Appeals.

In a published opinion, the Court of Special Appeals held that it was not an abuse of the trial judge's discretion to refuse to ask Mr. Curtin's handgun question. 165 Md.App. 60, 884 A.2d 758 (2005). In reaching this conclusion, the court noted that a trial judge, when deciding whether to ask a requested voir dire question, must assess whether there is a reasonable likelihood that the proposed question would reveal a basis for disqualification and also balance the time and judicial resources required to pose the question against the likelihood that the question would evoke a response reflecting bias or impartiality. *Id.* at 68, 884 A.2d at 763. The intermediate appellate court concluded that the question was not mandated because the jury was not required to analyze the "reasonableness" or "justifiableness" of the use of the gun in the instant case.

Before this Court, Mr. Curtin argues the use of a handgun is an essential element of the crimes in the present case because the indictment charged him with multiple counts of

armed robbery, use of a handgun in the commission of a crime of violence and first degree assault, and therefore a question pertaining to biases against handguns was appropriate. Mr. Curtin maintains that his defense at trial was that the State had not proven that the handgun used in the robbery was a real handgun. Moreover, Mr. Curtin claims that the Court of Special Appeals applied the wrong standard to determine whether the trial judge should have asked his proposed handgun question because the court held that a question regarding the jurors' emotions only must be asked if those emotions necessarily would affect the veniremen's ability to render an impartial verdict, whereas, he asserts, the correct standard to be applied is whether there is any likelihood that emotions would affect the venireman's ability to render an impartial verdict. Mr. Curtin contends that the correct standard requires that the trial court ask his proposed question because it was aimed at uncovering whether the veniremen harbored biases that were likely, rather than necessarily, to affect their ability to render a fair and impartial verdict.

Conversely, the State argues that the trial court is only required to ask a voir dire question if it focuses on issues particular to the defendant's case and relates to the alleged criminal acts. In this case, the State contends, a question regarding bias against handguns was not necessary because the use of the handgun was peripheral to a determination of Mr. Curtin's criminal culpability. According to the State, whether a juror is biased against the use of a handgun would not have made him or her more or less likely to have found Mr. Curtin guilty of any of the charges for which he was convicted, regardless of whether the juror believed the gun to have been real. Therefore, the State asserts that the handgun question was not required. Nonetheless, the State also alleges that, even if the question was required, the trial judge adequately addressed the issue of bias against handguns by propounding other questions to the venire.

## II. Discussion

In this case we must determine whether the trial judge abused his discretion in refusing to propound Mr. Curtin's voir

dire question designed to elicit information regarding whether any of the veniremen harbored strong feelings concerning the use of handguns such that they would have been unable to render a fair and impartial verdict based on the evidence. *State v. Thomas,* 369 Md. 202, 204, 798 A.2d 566, 567 (2002); *Boyd v. State,* 341 Md. 431, 433, 671 A.2d 33, 34 (1996); *Casey v. Roman Catholic Archbishop of Baltimore,* 217 Md. 595, 605, 143 A.2d 627, 631 (1958); *Alexander v. R.D. Grier & Sons Co.,* 181 Md. 415, 419, 30 A.2d 757, 759 (1943); *Cohen v. State,* 173 Md. 216, 195 A. 532 (1937); *Whittemore v. State,* 151 Md. 309, 314, 134 A. 322, 323 (1926).

 Voir dire is the primary mechanism through which the constitutional right to a fair and impartial jury, guaranteed by the Sixth Amendment to the United States Constitution and Article 21 of the Maryland Declaration of Rights, is protected. *Thomas,* 369 Md. at 206, 798 A.2d at 568; *see also Boyd v. State,* 341 Md. 431, 435, 671 A.2d 33, 35 (1996); *Couser v. State,* 282 Md. 125, 138, 383 A.2d 389, 396–97 (1978); *Grogg v. State,* 231 Md. 530, 532, 191 A.2d 435, 436 (1963). It is the process in which prospective jurors are examined through the use of questions propounded by the judge or either of the parties to determine the existence of any bias or prejudice and, literally translated, means "to say the truth." *Bedford v. State,* 317 Md. 659, 670, 566 A.2d 111, 116 (1989). The voir dire process is governed by Maryland Rule 4–312, which provides in pertinent part:

(d) **Examination of jurors.** The court may permit the parties to conduct an examination of prospective jurors or may itself conduct the examination after considering questions proposed by the parties. If the court conducts the examination, it may permit the parties to supplement the examination by further inquiry or may itself submit to the jurors additional questions proposed by the parties. The jurors' responses to any examination shall be under oath. Upon request or any party the court shall direct the clerk to call the roll of the panel and to request each juror to stand and be identified when called by name.

After a prospective juror is questioned, both the State and the defendant have the opportunity to exercise two types of challenges, those for cause and peremptory challenges. Peremptory challenges, as defined by Judge John C. Eldridge, writing for this Court in *Gilchrist v. State*, 340 Md. 606, 667 A.2d 876 (1995), are challenges exercised "without a reason stated, without inquiry, . . . without being subject to the court's control" and for either a real or imagined partiality " 'that is less easily designated or demonstrable' than that required for a challenge for cause." *Id.* at 619–20, 667 A.2d at 882, quoting *Swain v. State of Alabama*, 380 U.S. 202, 220, 85 S.Ct. 824, 836, 13 L.Ed.2d 759, 772 (1965). The number of peremptory challenges afforded a litigant is governed by Section 8–301 of the Courts and Judicial Proceedings Article and Maryland Rule 4–313.[7] Conversely, cause challenges

---

7. Maryland Code (1974, 2002), Section 8–301 of the Courts and Judicial Proceedings Article provides:

 (a) *Cases involving death.*—In a trial in which the defendant is subject, on any single count, to a sentence of death because notice of intention to seek a sentence of death has been given under § 2–202 of the Criminal Law Article, each defendant is permitted 20 peremptory challenges and the State is permitted 10 peremptory challenges for each defendant.

 (b) *Cases involving life imprisonment.*—In a criminal trial in which the defendant is subject, on any single count, to a sentence of life imprisonment, including a case in which notice of intention to seek a sentence of death has not been given under § 2–202 of the Criminal Law Article, except for common law offenses for which no specific penalty is provided by statute, each defendant is permitted 20 peremptory challenges and the State is permitted 10 peremptory challenges for each defendant.

 (c) *Cases involving sentences of 20 years or more.*—Except as provided in subsections (a) and (b) of this section, in a criminal trial in which the defendant is subject, on any single count, to a sentence of 20 years or more, except for common law offenses for which no specific penalty is provided by statute, each defendant is permitted 10 peremptory challenges and the State is permitted 5 peremptory challenges for each defendant.

 (d) *Other criminal cases.*—In all other criminal cases, each party is permitted 4 peremptory challenges.

 (e) *Clerk to furnish sufficient number of names.*—The clerk of the court shall provide a sufficient number of prospective jurors to allow the parties to exercise the peremptory challenges permitted by this section or the Maryland Rules.

"permit rejection of jurors on a narrowly specified, provable and legally cognizable basis of partiality," *Johnson v. State,* 9 Md.App. 143, 150, 262 A.2d 792, 796 (1970).

The scope of voir dire has been defined as either "limited," in which questions are restricted to "ascertaining the existence of cause of disqualification, and for no other purpose," or "expanded," in which the trial judge is required to inquire about "any subject matter which may be reasonably related to the intelligent exercise of peremptory challenges." *Davis v. State,* 333 Md. 27, 37, 39, 633 A.2d 867, 872–73 (1993). In *Handy v. State,* 101 Md. 39, 60 A. 452 (1905), we expressly rejected the contention that a litigant possessed "the absolute and unqualified right . . . to interrogate [a juror] at pleasure . . . for the purpose of determining whether the right of peremptory challenge shall be exercised," and that "the Court is bound to put to the juror any question which counsel may request the Court to put," and adopted a limited role for voir dire. *Id.* at 40, 60 A. at 453. Acknowledging "that there are decisions to the contrary in other courts of equal authority and reputation," we premised our decision to reject expanded voir dire, as a basis for peremptory strikes, on our findings that such an approach generated questions which were "speculative, inquisitorial, catechising and fishing," *Whittemore,* 151 Md. at 313–14, 134 A. at 323, and, in effect, offensive to the jurors, and also that such voir dire was much more time consuming and therefore wasteful of judicial resources.

---

Maryland Rule 4–313 provides in pertinent part:

(a) **Number.** (1) Generally. Except as otherwise provided by this section, each party is permitted four peremptory challenges.

(2) Cases involving death or life imprisonment. Each defendant who is subject on any single count to a sentence of death or life imprisonment, except when charged with a common law offense for which no specific penalty is provided by statutes, is permitted 20 peremptory challenges and the State is permitted ten peremptory challenges for each defendant.

(3) Cases involving imprisonment for 20 years or more, but less than life. Each defendant who is subject on any single count to a sentence of imprisonment for 20 years or more, but less than life, except when charged with a common law offense for which no specific penalty is provided by a statute, is permitted ten peremptory challenges and th State is permitted five peremptory challenges for each defendant.

*Handy*, 101 Md. at 43, 60 A. at 454. We determined that the better policy was to limit the scope of voir dire at the discretion of the trial judge, who would only propound questions that were "required to ascertain [the jurors'] competency, but also . . . as may test their impartiality, prejudice, or bias." *Id.* at 42–43, 60 A. at 454, quoting *Powers v. Presgroves*, 38 Miss. 240, and affirmed the denial of specific voir dire questions, stating:

> [T]here was another all sufficient reason for the [trial court's] ruling. [The question] was susceptible of only two answers—either that he was, or was not, a married man— and in either event the answer is clearly immaterial. . . . The record shows that the [defendant] killed his wife because he believed she allowed and encouraged improper attentions from one Thomas, but neither in law nor in common sense can it be supposed that competency to judge of the effect of such provocation is found exclusively in married men and if we may indulge in speculation as to the reason behind this question, imagination can suggest none more substantial than that we have hazarded.

*Id.* at 44, 60 A. at 454.

In *Whittemore v. State*, 151 Md. 309, 134 A. 322 (1926), we iterated the policy adopted in *Handy* prohibiting questions directed merely at aiding a party to exercise a peremptory challenge because such an approach created an "unreasonable encumbering and prolongation of the work of securing a jury to proceed with trial," *id.* at 314, 134 A. at 323, and explicated the rule applied to this day:

> The rule is, then, that questions not directed to a specific reason for disqualification and exclusion by the court may be refused in the court's discretion. The nature and extent of the examination are to be decided by the court in each case in its discretion, and on appeal the ruling will not be interfered with, unless there has been a clear abuse of that discretion.

*Id.* at 315, 134 A. at 324. *See also Dingle*, 361 Md. 1, 10 n. 8, 759 A.2d at 819, 824 n. 8; *Boyd*, 341 Md. at 436, 671 A.2d at

35; *Casey*, 217 Md. at 605, 143 A.2d at 631. In conformity with this rule, we noted that the trial judge should "adapt the questions to the needs of particular cases," such that "any circumstances which may reasonably be regarded as rendering a juryman unfitted for this service may be made the subject of questions, and a challenge for cause." *Whittemore*, 151 Md. at 315, 134 A. at 324.

In *Corens v. State*, 185 Md. 561, 45 A.2d 340 (1946), we addressed the propriety of the State's voir dire question inquiring whether the veniremen were capable of convicting the defendant based upon circumstantial evidence, rather than direct evidence, in a capital punishment case. We explained that, under the strictures of the rule set forth in *Whittemore*, questions posed during voir dire must focus on the veniremen's state of mind with respect to a particular issue which may provide a basis for bias:

> In other words, an examination of a prospective juror on his *voir dire* is proper as long as it is conducted strictly within the right to discover the state of mind of the juror in respect to the matter in hand or any collateral matter reasonably liable to unduly influence him.

*Id.* at 564, 45 A.2d at 343. *See also Thomas*, 369 Md. at 207, 798 A.2d at 569; *Davis*, 333 Md. at 35–36, 633 A.2d at 872; *Bedford*, 317 Md. at 671, 566 A.2d at 117. We concluded that the trial judge did not abuse his discretion in propounding the question because it was directed towards discovering whether the veniremen would be unwilling to convict only on circumstantial evidence. *Corens*, 185 Md. at 565, 45 A.2d at 344.

Almost a century after *Handy*, we revisited the policy reasons for adhering to the system of limited voir dire in *Davis v. State, supra,* explaining:

> This Court initially adopted the rules concerning the scope of *voir dire* because allowing more extensive inquiry would unduly tax the efficiency of Maryland's judicial system. Although some litigants might benefit from broader mandatory *voir dire*, a greater number of citizens would be hindered due to the accompanying decline in their ability to

gain prompt resolution of their litigation. In *Handy* and *Whittemore*, this Court decided that any such detrimental effects outweighed the marginal gains springing from unlimited *voir dire*. Writing for the Court of Special Appeals in the instant case, Judge Moylan vividly captured the essence of this policy choice. In comparing Davis's proposed system of expanded *voir dire* with Maryland's current system, Judge Moylan wrote the following:

'There is, however, an opposing school of thought that looks upon such indulgence as errant, if not grotesque, foolishness.... In terms of the profligate waste of precious courtroom and human resources, it looks upon any fractional gain from unlimited *voir dire* as a minimally incremental benefit that soon passes the point of diminishing returns. In a world of finite resources, if the fable "day in court" is permitted casually to multiply into twenty days in court, the inevitable consequence is that, by the inexorable law of mathematics, nineteen other litigants are denied any time in court at all....'

*Davis,* 333 Md. at 42, 633 A.2d at 874–75.

In *Davis,* the defendant, on trial for the possession and distribution of controlled dangerous substance, requested a question regarding whether any of the jurors had been or was a member of the law enforcement community, or whether any close relative or friend was such a member. In emphasizing that the purpose of voir dire is to ascertain whether there exists some bias, prejudice, or preconception that would impair a venireman's ability to render an impartial verdict based solely on the evidence presented, *id.* at 37–38, 633 A.2d at 872, we determined that:

[a]ssuming that the court would have allowed such an inquiry, an affirmative answer would not have established cause for disqualification. First, the fact that a prospective juror is or was a member of a law enforcement body does not automatically disqualify that venire person.... Likewise, the mere fact that a prospective juror is related to or associated with members of the law enforcement community does not constitute cause for disqualification. In general,

the professional, vocational, or social status of a prospective juror is not a dispositive factor establishing cause to disqualify.

*Id.* at 37, 633 A.2d at 872. Thus, only in "those instances where there is a *demonstrably strong correlation* between the status in question and mental state that gives rise to cause for disqualification" is the trial court required to propound the question. *Id.* (emphasis added). In holding that the trial judge did not abuse his discretion in refusing to ask the proposed question about relationships to law enforcement officers, we noted that:

> where the parties identify an area of potential bias and properly request *voir dire* questions designed to ascertain jurors whose bias could interfere with their ability to fairly and impartially decide the issues, then the trial judge has an obligation to ask those questions of the venire panel.... Those *voir dire* questions, however, should be framed so as to identify potential jurors with biases which are cause for disqualification, rather than merely identifying potential jurors with attitudes or associations which might facilitate the exercise of peremptory challenges.

*Id.* at 47, 633 A.2d at 877.

■ We further explored the discretion entrusted to trial judges while conducting voir dire in *Dingle v. State*, 361 Md. 1, 759 A.2d 819 (2000). On trial for robbery with a dangerous and deadly weapon and related charges, the defendant asked that the trial judge inquire as to whether any of the veniremen had experience as a victim of a crime, as an accused or as a convicted person, as a witness in a criminal case, as a petit juror in a criminal case, as a member of a grand jury, or as a member of any victims' rights group, and whether they had any connection with the legal profession or law enforcement. In posing the requested questions, however, the trial judge, "presumably understanding that 'it is the correlation between the juror's status and his or her state of mind that is dispositive when the venire person's status is relevant to his or her bias,' " conflated the questions regarding experiences and

status with the State's requested question regarding whether those experiences or statuses would affect the venireman's ability to be impartial. *Id.* at 17, 759 A.2d at 827. Thus, the juror would not have disclosed his or her individual experience or status unless he or she had determined that it would impair his or her impartiality. Examining the trial judge's questioning technique, we took the opportunity to expound upon the scope of the causal strike system, stating:

> [T]he strike for cause process encompasses the situations where the motion to strike is made on the basis of information developed during the voir dire process, not simply where the prospective juror admits an inability to be fair and impartial.

*Id.* at 17, 759 A.2d at 828. In order to meet this dual purpose, we iterated that the questions posed during voir dire

> should focus on issues particular to the defendant's case so that biases directly related to the crime, the witnesses, or the defendant may be uncovered.

*Id.* at 10, 759 A.2d at 824. Thus, in determining whether to pose a requested voir dire question, the trial judge should first determine whether

> a *demonstrably strong correlation* [exists] between the status [or experience] in question and a mental state that gives rise to cause for disqualification.

*Id.* at 17, 759 A.2d at 828 (emphasis added). We held that the trial judge's questioning methodology was an abuse of discretion because the two-part questions denied the defendant the opportunity to hear the veniremen's responses to the questions regarding status and experiences and shifted the burden of determining whether the venireman could be impartial to the venireman rather than the trial judge.

More recently, in *State v. Thomas, supra,* the defendant, on trial for the possession and distribution of a controlled dangerous substance, requested and was denied the opportunity to pose a voir dire question at his trial inquiring whether:

> [A]ny member of the jury panel ha[s] such strong feelings regarding violations of the narcotics laws that it would be

difficult for you to fairly and impartially weigh the facts at a trial where narcotics violations have been alleged?

*Thomas,* 369 Md. at 204, 798 A.2d at 567. We reversed Mr. Thomas's convictions based upon our determination that it was error for the judge not to have asked this question in light of our recognition that for decades narcotics laws have engendered strong feelings and reactions in the populace and stated that:

The intermediate appellate court's analysis is instructive. Relying on this Court's opinion in *King v. State,* 287 Md. 530, 536, 414 A.2d 909, 912 (1980), in which we stated, '[i]t is common knowledge that a significant segment of our society believes, as a matter of public policy, that the criminal laws relating to marijuana should be modified in one way or another,' and *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), explaining 'the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment,' the Court of Special Appeals notes that it is not extraordinary for most citizens to have a bias against proscribed criminal acts and that '[p]rospective jurors with strong feelings about drugs are not uncommon.' *Thomas,* 139 Md.App. at 203, 204, 775 A.2d at 415. After reviewing some of the literature addressing 'controversial alternatives to the nation's current drug prohibition laws,' *id.* at 204, 775 A.2d at 415, the intermediate appellate court observes that 'the "war on drugs" continues to be a household phrase,' *id.,* reports that there is a view that the "war" can create biases that alter the impartial state of mind of a prospective juror, *id.* at 204–205, 775 A.2d at 417, and offers, citing a pending case in the Court of Special Appeals and the *King* case, evidence that voir dire questions on drug attitudes 'are effective in revealing strong feelings towards narcotics laws that may hinder a juror's ability to serve.' *Id.* at 205, 775 A.2d at 416. Noting that the areas of inquiry that must be pursued, if reasonably related to the case at hand, 'entail potential biases or predispositions that prospective jurors may hold which, if present, would hinder their ability to

objectively resolve the matter before them,' *id.* at 206, 775 A.2d at 417, citing and quoting *Davis,* 333 Md. at 36, 633 A.2d at 872, the Court of Special Appeals opines:

> Laws regulating and prohibiting the use of controlled dangerous substances harbor an unusual position with our criminal code, such that jurors may be biased because of strong emotions relating to the dangers of narcotics and their negative effects upon our cities and neighborhoods, or, on the contrary, biases may exist because of passionate positions that advocate the decriminalization of narcotics.

*Id.* at 211–13, 798 A.2d at 571–72 (footnotes omitted).

The same type of reasoning held sway in *Sweet v. State,* 371 Md. 1, 806 A.2d 265 (2002), in which the defendant, charged with second degree assault and third degree sexual offense against a minor, was denied his request that the jury panel be asked whether "the charges stir up strong emotional feelings in you that would affect your ability to be fair and impartial" in the case. *Id.* at 9, 806 A.2d at 270–71. After reviewing the national effort to address crimes of violence and molestation committed against children in the United States and Maryland's response thereto, we held that it was an abuse of discretion for the trial judge to refuse to ask the proposed question because allegations of sexual abuse of a minor are capable of evoking strong feelings which, if uncovered, could constitute grounds for disqualification. *Id.* at 10, 806 A.2d at 271.

In the case *sub judice,* the question propounded by Mr. Curtin regarding strong feelings about the use of a handgun does not involve any of the areas for which we have mandated inquiry.[8] Rather, Mr. Curtin urges us to hold that because he

---

**8.** These areas are: race, ethnicity, or cultural heritage, *Hernandez v. State,* 357 Md. 204, 232, 742 A.2d 952, 967 (1999) ("Where a *voir dire* question has been properly requested and directed to bias against the accused's race, ethnicity, or cultural heritage, the trial court ordinarily will be required to propound such a question."), religious bias, *Casey,* 217 Md. at 607, 143 A.2d at 632 ("[I]f the religious affiliation of a juror

was alleged to have used a handgun in the commission of a robbery that a voir dire question regarding strong feelings about handguns is mandated to enable him to strike veniremen who embrace such feelings.

Although Mr. Curtin alleges that his requested voir dire question comes within the strictures of *Thomas* and *Sweet*, we recognized in those cases that the charges of narcotics possession and child molestation in and of themselves could evoke strong feelings that could unduly bias a venireman. In the present case, however, Mr. Curtin was charged with armed robbery, use of a handgun in the commission of a crime of violence, first degree assault and conspiracy. We believe that the Court of Special Appeals was correct when Judge Daniel Long, specially assigned, writing for the court, determined that Mr. Curtin's voir dire question was not mandated in this case merely because a handgun was used and in so doing,

---

might reasonably prevent him from arriving at a fair and impartial verdict in a particular case because of the nature of the case, the parties are entitled to ... have the court discover them."); in capital cases, the ability of a juror to convict based upon circumstantial evidence, *Corens*, 185 Md. at 564, 45 A.2d at 344 ("We ... hold that the State has the right to challenge a juror in a capital case on the ground that he would not be willing to convict on circumstantial evidence."), and placement of undue weight on police officer credibility, *Langley v. State*, 281 Md. 337, 349, 378 A.2d 1338, 1344 (1977) ("[W]e hold that in a case such as this, where a principal part of the State's evidence is testimony of a police officer diametrically opposed to that of a defendant, it is prejudicial error to fail to propound a question such as ... whether any juror would tend to give either more or less credence ... [to a police officer]."); violations of narcotics law, *Thomas, supra,* (holding that trial judge abused his discretion in failing to ask question whether any jurors harbored strong feelings towards the violation of narcotics laws where defendant was charged with the possession and distribution of a controlled dangerous substance); strong emotional feelings with regards to alleged sexual assault against a minor, *Sweet, supra,* (holding that trial court abused its discretion in refusing to ask whether the charges of second degree assault and third degree sexual offense against a minor stirred up such strong emotional feelings that it would affect the veniremen's impartiality); cf. *Landon v. Zorn*, 389 Md. 206, 222, 884 A.2d 142, 151 (2005) (holding that trial judge did not abuse his discretion in refusing to ask proposed voir dire question regarding bias against plaintiffs in personal injury and medical malpractice cases because an affirmative answer to the proposed question would not constitute grounds for disqualification for cause).

distinguished the instant case from *Baker v. State*, 157 Md. App. 600, 853 A.2d 796 (2004),[9] in which the intermediate appellate court had determined that the trial court had abused its discretion in not asking the propounded voir dire question regarding handguns:

> Appellant's defenses were based on theories suggesting that appellant was not a participant in the bank robbery or, alternatively, that there was no evidence that a real gun was in fact used. Under these circumstances, we are not persuaded that the trial court abused its discretion in refusing to ask appellant's proposed voir dire question regarding attitudes of potential jurors toward guns.

\* \* \*

In this case ... potential juror bias about handguns does not go so directly to the nature of the crime. Appellant was accused of robbing a bank with an accomplice who was brandishing a gun. Unlike the situation in *Baker*, no analysis or weighing of issues pertaining to the gun was required by jurors in this case, other than accepting or rejecting the State's evidence demonstrating that a gun was used in the commission of the crime. The proposition that a juror's strong feelings for or against handguns would necessarily preclude him or her from fairly weighing the evidence in this case—where there was clearly no question relating to the "reasonableness" or "justifiableness" of the use of the gun under the circumstances—is based upon a transcendental line of reasoning with which we disagree. *Baker* makes

---

9. In *Baker*, the defendant was charged with first and second degree assault and the use of a handgun in the commission of a crime of violence after shooting an unarmed man and claimed at trial that he had shot the man in defense of both himself and his girlfriend. The Court of Special Appeals held that the trial judge had abused his discretion in refusing to ask the defendant's proposed handgun question because a key issue before the jury was whether the defendant, in firing the handgun, had exercised justifiable or reasonable force. *Id.* at 613, 853 A.2d at 803. Thus, the intermediate appellate court concluded that the handgun question was properly directed towards uncovering strong feelings about whether handgun use is ever justifiable or reasonable. *Id.*

clear that a proposed voir dire question should not be probing or abstract, but should directly address potential jurors' biases, prejudices, and ability to weigh the issues fairly. The inquiry should focus on the venire person's ability to render an impartial verdict based solely on the evidence presented. Appellant's proposed voir dire question did not directly address a juror's ability to weigh the issues fairly or render an impartial verdict in this case. Given the nature of the charges against appellant, a juror who had strong feelings for or against handguns could nonetheless be fair and impartial. Additionally, after balancing the judicial interest of probing into the likelihood of uncovering disqualifying juror partiality or bias with the interests of judicial efficiency and preservation of a court's limited resources, we are troubled by the precedential consequences of expanding our holding in *Baker* to effectively require a court to ask whether any prospective juror has "strong feelings on handguns" in every case in which the jury will receive evidence that a handgun was used in the commission of a crime. Accordingly, we conclude that the trial court did not err in declining to give appellant's proposed voir dire question asking whether any potential juror had strong feelings concerning the use of handguns that would make him or her unable to render a fair and impartial verdict based on the evidence.

*Curtin,* 165 Md.App. at 68, 884 A.2d at 763–64.

Mr. Curtin also alleges, however, that, in so holding, the Court of Special Appeals applied the wrong standard for determining whether his question was required to be asked. Mr. Curtin is incorrect. Having noted that a proposed voir dire question must be asked if there is a *reasonable likelihood* that it would reveal a basis for disqualification, the intermediate appellate court concluded that Mr. Curtin was inaccurate when he proposed the proposition that "a juror's strong feelings for or against handguns would *necessarily* preclude him or her from fairly weighing the evidence" in the case at hand. Thus, the Court of Special Appeals applied the correct standard in its holding, with which we agree.

In the case before us, the jury was called upon, as always, to measure whether the State had met its burden of proof as to whether Mr. Curtin was the perpetrator and whether the gun was real, not whether Mr. Curtin was legally in possession of a handgun, or used the handgun in a reasonable or justifiable way, situations which could, conceivably, evoke strong feelings about handguns. Whether a venireman has strong feelings about handguns would not render him or her more or less likely to convict Mr. Curtin of the charges on the evidence presented at trial, and therefore the trial judge did not abuse his discretion in refusing to ask the question.[10] Thus, we affirm the decision of the Court of Special Appeals.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.**

WILNER, J., Concurs.

BELL, C.J., and RAKER, J. Dissent.

Concurring Opinion by WILNER, J.

I concur in the Court's opinion because I agree that it would be a departure from our existing case law to find error in the Court's refusal to pose the question at issue here. I do think, however, that the Court should consider, prospectively, a different approach, one on which we have already embarked.

In *State v. Thomas,* 369 Md. 202, 798 A.2d 566 (2002), we concluded that the public had such strong feelings about narcotics violations that it was necessary for a trial judge, on request, to question prospective jurors regarding their views

---

**10.** Additionally, the other voir dire questions posed by the court adequately addressed any potential issues of bias regarding the nature of armed robbery when the trial court asked whether any of the veniremen were members of or contributed to organizations such as the NRA that advocate on criminal justice issues, whether any of the veniremen felt that the defendant was guilty merely because of the crimes with which he had been charged, and whether any of the veniremen possessed any ethical or moral obligation that would prevent them from serving on the panel. *See Landon,* 389 Md. at 222 n. 8, 884 A.2d at 151 n. 8 (concluding that proposed question was adequately covered by other questions asked of the jury during voir dire).

about drug crimes. In *Sweet v. State,* 371 Md. 1, 806 A.2d 265 (2002), we reached a similar conclusion with respect to crimes involving the sexual abuse of a minor. It is obviously not reasonable to presume that those are the *only* kinds of crimes about which public emotion may run high. Surely, there are others. Having found that those kinds of criminal activity may so enrage prospective jurors as to require specific voir dire questions to ferret out possible bias, what standard will the Court use to distinguish one crime from another?

We have essentially taken judicial notice that some people may have particularly strong feelings about narcotics crimes. Is it not equally likely that some will have the same strong feelings about other crimes—burglary, robbery, rape, arson, not to mention murder. Some may be incensed over gambling or prostitution, or wanton, vicious assault, or cruelty to animals, or fraud. If the question is phrased as here—whether the prospective juror has such strong feelings about the crime as to make it difficult (or impossible) to weigh the facts fairly—what difference does it make what the crime is?

I do not believe in the kind of open-ended voir dire that we see in other States. I agree it should remain limited to discovering grounds that would support a challenge for cause and not be expanded to aid in the exercise of peremptory challenges. I fail to see how any kind of detailed line-drawing will work, however—how a question aimed at Crime A is required but not a question aimed at Crime B. In the great majority of cases, it would not unduly delay trial to ask whether the jurors have such a bias regarding the crime or crimes actually charged. Few jurors, I expect, will truthfully respond in the affirmative, and, to the extent they do, a few follow-up questions by the court will serve precisely the function of voir dire that we have traditionally blessed.

I would prefer to do this by Rule rather than by judicial decision. It would give us the opportunity to frame an acceptable (not necessarily a mandated) form of question going to bias emanating from the nature of the crime and put

the question in the Rules, where it would be more likely to be seen than in one opinion of the Court.

Dissenting Opinion by BELL, C.J., which RAKER, J., joins.

In *State v. Thomas*, 369 Md. 202, 798 A.2d 566 (2002), defense counsel proposed to ask the venire panel, "Does any member of the jury panel have such strong feelings regarding violations of the narcotics laws that it would be difficult for you to fairly and impartially weigh the facts at a trial where narcotics violations have been alleged?" 369 Md. at 204, 798 A.2d at 567. The trial court refused, ruling, instead, that the question was fairly covered by other questions asked in voir dire, namely whether any members of the venire had formed an opinion or had information about the case and whether there was any other reason why any panel member felt he or she could not be impartial. 369 Md. at 205, 798 A.2d at 568. This Court held that the latter questions did not adequately probe the venire's attitudes about drug offenses. We opined:

"A question aimed at uncovering a venire person's bias because of the nature of the crime with which the defendant is charged is directly relevant to, and focuses on, an issue particular to the defendant's case and, so, should be uncovered."

369 Md. at 214, 798 A.2d at 573. We held that the defendant had the right to a question specifically aimed at uncovering a bias due to the nature of the crime with which he was charged, and, accordingly, that the trial court abused its discretion when it refused to ask the requested voir dire question. 369 Md. at 214, 798 A.2d at 573.

In *Sweet v. State*, 371 Md. 1, 806 A.2d 265 (2002), a case involving the sexual abuse of a minor, during voir dire, the defendant requested that the trial court ask the venire: "Do the charges stir up strong emotional feelings in you that would affect your ability to be fair and impartial in this case?" The trial court declined to pose the question. We held that *Thomas* was applicable and controlling, concluding that the proposed inquiry was directed at biases related to the charged

criminal act, that, if uncovered, "would be disqualifying when they impaired the ability of the juror to be fair and impartial." 371 Md. at 10, 806 A.2d at 271. We further concluded that the trial court abused its discretion in failing to pose the requested voir dire question, and that the defendant was entitled to a new trial. 371 Md. at 10, 806 A.2d at 271.

Despite this clear precedent, today this Court's majority affirms the trial court's refusal to propound to the venire the question, "Does anyone have any strong feelings concerning the use of handguns that they would be unable to render a fair and impartial verdict based on the evidence?" 393 Md. 593, 595, 903 A.2d 922, 923 (2006). And, notwithstanding that, except for the crime described, the question in this case was essentially identical to the questions, as to which the failure to ask was deemed error, in *Thomas* and *Sweet*, the Court reasons, "because the question was not one that, if answered in the affirmative, would have provided a basis for a strike for cause in the instant case, the trial court did not abuse its discretion in denying the requested voir dire question." *Id.* at 595, 903 A.2d at 924. This rationale, joined by the concurring opinion of Judge Wilner, is that finding error in this case would be a departure from our existing case law. *Id.* at 613, 903 A.2d at 393; 393 Md. at 613, 903 A.2d at 934 (Wilner, J., concurring).

There is a lot to be said for Judge Wilner's concurrence in this case. It makes the point, and quite well, that this Court already has required voir dire questions designed to ferret out bias, arising from and/or based on certain charged offenses, that, in that regard, this Court already has embarked on and endorsed, an approach different from that espoused and touted as the approach our existing case law supports. Acknowledging our decisions in *Thomas* and *Sweet*, he recognizes the unreasonableness in presuming that the crimes at issue in those cases "are the *only* kinds of crimes about which public emotion may run high." 393 Md. at 613, 903 A.2d at 934 (Wilner, J., concurring). In addition, Judge Wilner concedes that the additional voir dire required to inquire into charged crime bias is not likely to be lengthy or cause undue trial

delay. 393 Md. at 614, 903 A.2d at 935 (Wilner, J., concurring). While I do not share Judge Wilner's cynicism with respect to the truthfulness of the venirepersons when answering the question whether they have a potentially disqualifying bias regarding the crime or crimes actually charged,[1] I do agree that the number of responses are not likely to be overwhelming. I also agree that, to the extent that there are affirmative responses, the follow-up questions that the court will be required to ask, likely to be few in number, "will serve precisely the function of voir dire that we have traditionally blessed."[2] 393 Md. at 614, 903 A.2d at 935 (Wilner, J., concurring). Judge Wilner also seems to appreciate that the expansion of voir dire to take account of charged crime bias will not be unduly burdensome:

"We have essentially taken judicial notice that some people may have particularly strong feelings about narcotics crimes. Is it not equally likely that some will have the same strong feelings about other crimes—burglary, robbery, rape, arson, not to mention murder. Some may be incensed over gambling or prostitution, or wanton, vicious assault, or cruelty to animals, or fraud. If the question is phrased as here—whether the prospective juror has such strong feelings about the crime as to make it difficult (or impossible) to

---

**1.** My experience, ten years, as a trial judge, is that the vast majority of venirepersons take seriously the oath and endeavor mightily, even at the risk of embarrassment, to answer truthfully the questions put to them. I have had venire persons—not a lot, to be sure—admit to having strong feelings, arising in some instances to the level of bias, about crimes other than narcotics and child sex offenses, not in the context here presented, but when responding to the "victimization" question.

**2.** The number of affirmative responses likely to be elicited and, therefore, the number of venirepersons who will have to be questioned on the subject, is just not my major concern, nor should it be this Court's. I *am* concerned that we ferret out bias that would affect the fairness of the defendant's trial adversely. Thus, I do not believe that the expansion of the voir dire to address charged crime bias will appreciably prolong the process, and, if the expansion serves the function of ensuring a fair trial, the amount of time it takes is secondary, or should be; concerns regarding time should not drive, or be the decisive factor in, the process.

weigh the facts fairly—what difference does it make what the crime is?"

393 Md. at 614, 903 A.2d at 935 (Wilner, J., concurring).

The concurring opinion on these points is, for the most part, correct. To that extent, I agree with it. My quarrel is with how Judge Wilner resolves these concerns. He would achieve the result the defendant seeks in this case and expand it to other crimes that might engender strong emotional reactions prospectively, by Rule. He admits, in that regard, his difficulty in discerning "how any kind of detailed line-drawing will work . . .—how a question aimed at Crime A is required but not a question aimed at Crime B." 393 Md. at 614, 903 A.2d at 935 (Wilner, J., concurring). The preference for the Rules approach, we are told, lies in the opportunity it affords the Court to frame an acceptable question, perhaps not mandated, to address the bias issue. 393 Md. at 614, 903 A.2d at 935 (Wilner, J., concurring).

Judge Wilner's logic dictates that this Court do in this case what it did in *Thomas* and *Sweet*, and recognize the court's refusal to pose the question requested by the defense for what it was, an error. Having acknowledged that the Court has already entered the area and declared error in two cases involving different crimes and conceding, as I submit, he must, that there are other crimes that likely will engender, in some members and segments of the public, strong emotional reaction, thus undermining the rationale of the majority opinion, joining the majority simply does not follow. Nor does making the solution—the second deviation or departure from our case law as *Thomas* and *Sweet* are, like it or not, a part of our case law, and are precedents that have not been overruled—prospective by having the Court promulgate a rule follow, make sense, or serve the purpose of fairness. This ruling does not give relief to the defendant before the Court in this case, and I fail to see how referring this matter to the Rules Committee will assist the line drawing. The line drawing is ours to do and we are as prepared to do so now as we will be later. I see no reason to wait for a Rule on this issue; visibility is, if an issue at all, a minor one. The trial courts, as a result of

*Thomas* and *Sweet,* already know how to ask this question, and do not need further instruction.

We already have decided and agreed that certain crimes—we have specifically singled out child sexual offenses and narcotic offenses—may trigger sufficiently strong reactions in potential jurors as to make questionable their ability to render a fair and impartial verdict. If, in narcotics and child sex abuse cases, inquiry of the venire is required because we have determined those crimes to evoke strong emotional reactions which may amount to bias, why do we not recognize that there are other crimes that may evoke the same or more extreme reactions. It is unconscionable that we would inquire in some cases, those we have specifically recognized, but refuse to do so in those other cases, simply because it might take too long and perhaps because it may be too difficult to decide which cases fall into the *Thomas* and *Sweet* category. Under that regime, the Court is allowing two categories of cases to be targeted, while allowing the vast majority to go unchecked for possible bias. The answer is clear; we must require, as a matter of policy, trial courts to ask, in every criminal trial, whether the prospective juror has such strong feelings about the charged crime as to make it difficult or impossible to weigh the facts fairly.

Like the concurrence, I agree that voir dire should be limited in nature, and that asking potential jurors whether they possess bias in regards to the crime or crimes charged would not result in any substantive delay of trial. I depart from the concurrence because I believe that we should follow our precedents; a Rule is simply unnecessary.

I would reverse.

Judge RAKER joins in the views herein expressed.